## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE WATTS, ANTHONY WATTS, and ADAM PIZZITOLA, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, LIBERTY MUTUAL GROUP, INC., LMHC MASSACHUSETTS HOLDINGS, INC., and LIBERTY MUTUAL HOLDING COMPANY, INC.,<br><br>   Defendants. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs Diane Watts and Anthony Watts (together, "Watts" or the "Watts Plaintiffs"), and Adam Pizzitola ("Pizzitola") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, file this Class Action Complaint ("Complaint"), and allege based upon personal knowledge as to themselves and their acts, the investigation of counsel, and publicly available information as follows:

## INTRODUCTION

1. Plaintiffs bring this class action lawsuit for breach of contract, vexatious refusal to pay, and insurance bad faith against Defendants Liberty Mutual Personal Insurance Company, Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company, Inc. (collectively, "Liberty Mutual" or "Defendants"), in connection with Liberty

Mutual's standard practice of prematurely terminating Transportation Expenses Coverage benefits when it declares a vehicle a total loss.[1]

2.      Specifically, Liberty Mutual sells automobile insurance policies that include optional coverage for "Transportation Expenses" (hereinafter referred to as "Transportation Expenses Coverage"). Transportation Expenses Coverage is intended to reimburse an insured for transportation expenses such as the cost of a rental car, while an insured's own automobile is not available after a covered insurance claim.

3.      Under its Transportation Expenses Coverage, when Liberty Mutual declares a vehicle a total loss it is contractually obligated to pay for coverage limited only by a per accident limit, a daily monetary rate, and the "***period of time reasonably required to . . . replace***" the totaled vehicle.

4.      In breach of its insurance policy, when Liberty Mutual determines that a vehicle is a total loss, it does not evaluate the amount of time "reasonably required" for an insured to replace the totaled vehicle. Instead, Liberty Mutual systematically places an arbitrary cap on the length of time it pays Transportation Expenses Coverage.

5.      For example, when the Watts' vehicle was declared a total loss, Liberty Mutual arbitrarily and without conducting any investigation into what would have been a reasonable amount of time to replace their vehicle, instead limited Watts' coverage, providing only seven days of coverage after the vehicle was determined to be a total loss. This was a clear breach of Liberty Mutual's automobile insurance policy, and Liberty Mutual has no cause or excuse for refusing to

---

[1] A total loss generally means that the insurance company has determined that the cost to repair the damage to an automobile is more than the automobile is worth.

pay the full amount of Transportation Expenses Coverage it was obligated to provide under its insurance policies.

6.    Plaintiffs seek to represent a Class and/or Subclasses of all insureds who have suffered similar injury when Liberty Mutual arbitrarily and prematurely terminated Transportation Expenses Coverage, and to recover all damages and losses owed to them.

## PARTIES

7.    Plaintiffs Diane Watts and Anthony Watts are married adult individuals who reside in Kansas City, Missouri.

8.    Plaintiff Adam Pizzitola is an adult individual who resides in Oak Lawn, Illinois.

9.    Defendant Liberty Mutual Personal Insurance Company is a New Hampshire company with a principal place of business located at 175 Berkeley Street, Boston, MA 02116.

10.    Defendant Liberty Mutual Group, Inc. is a Massachusetts corporation with a principal place of business located at 175 Berkeley Street, Boston, MA 02116.

11.    Defendant LMHC Massachusetts Holdings, Inc. is a Massachusetts corporation with a principal place of business located at 175 Berkeley Street, Boston, MA 02116.

12.    Defendant Liberty Mutual Holding Company, Inc. is a Massachusetts corporation with a principal place of business located at 175 Berkeley Street, Boston, MA 02116.

13.    At all relevant times, Defendants acted as the alter ego, on behalf of each other, as the agent or authorized representative of one another, and/or the insurer of Plaintiffs and Class members.

## JURISDICTION AND VENUE

14.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek relief on behalf of a class, which will result in at least one class member belonging to a different state than the Defendants, and the damages of the proposed Class as defined below exceed $5,000,000.

15.    Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391(b)(1), as Defendants are all residents of this District.

## FACTUAL BACKGROUND

### A.    Diane Watts and Anthony Watts

#### 1. The Watts Plaintiffs' Policy

16.    On or about April 15, 2023, there was in full force and effect an automobile insurance policy, no. AOV-243-634444-70 3 7, between the Watts and Liberty Mutual (the "Watts Policy"). *See* Watts Policy Declarations, attached as Exhibit "A."[2]

17.    The Watts Policy provided, among other things, insurance coverage for the use of the Watts' 2009 Nissan Ultima (the "Watts Vehicle").

18.    The Watts Policy, in addition to other insurance benefits, promised to provide the Watts with coverage to rent a replacement vehicle in the event that their vehicle was damaged in a loss. These benefits are referred to as Transportation Expenses Coverage. *See* Watts Policy Declarations p. 3 of 4, attached as Exhibit "A."

---

[2] The Watts Plaintiffs possess a copy of the declaration pages of their Liberty Mutual automobile insurance policy for the policy period beginning on February 10, 2023, and ending on February 10, 2024, but do not possess a complete copy of their policy. Further, the policy declaration pages they do possess were updated to replace the 2009 Nissan Ultima that was totaled in the accident with the vehicle the Watts Plaintiffs purchased after the accident. Plaintiffs will request in discovery that Liberty Mutual provide a certified copy of the Watts' Policy in effect at the time of this loss, including the declaration pages applicable to the 2009 Nissan Ultima involved in the April 15, 2023 accident.

19.    The Watts Policy's Transportation Expenses Coverage provides as follows:

**OPTIONAL TRANSPORTATION EXPENSES COVERAGE**

When there is a loss to a **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for:

**1.**    Additional transportation expenses incurred by you for renting a substitute auto.

**2.**    Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto**.

**3.**    Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto**.

All coverage provided by this endorsement shall only apply once for any single occurrence.  Our payment will be limited to that period of time *reasonably required to repair or replace* **your covered auto** or the **non-owned auto**.

*See* Form AS 2225 06 05, attached as Exhibit "B" (emphasis in original and added).[3]

20.    The Watts Policy's declarations page sets forth the length of time Transportation Expenses Coverage is available, and the maximum benefit recoverable:

Optional Coverages

Transportation Expenses        $30 Per Day

                               $900 Per Accident

---

[3] While the Watts Plaintiffs do not possess a complete copy of their Liberty Mutual automobile insurance policy covering the February 10, 2023 to February 10, 2024 policy term, the policy declaration pages confirm that Optional Transportation Expenses Coverage Form AS2225 06 05 is included with their policy. *See* Watts Policy Declarations, p. 4 of 4, attached as Exhibit "A." This same form is attached to the Complaint as Exhibit "B."

*See* Watts Policy at Declarations p. 3 of 4, attached as Exhibit "A." The maximum allowed amount of $900 constitutes thirty (30) days of Transportation Expenses Coverage at the "Daily Limit" of $30 (*i.e.*, $900 / $30 = 30 days).

### 2. The Watts Plaintiffs' Accident

21.     On or about April 15, 2023, Diane Watts was involved in an automobile collision.

22.     As a result of this collision, the Watts Vehicle suffered physical damage.

23.     As a result of the damage that the Watts Vehicle suffered in the collision, the Watts Vehicle was withdrawn from use for more than 24 hours.

24.     As a result of the collision, the Watts Vehicle suffered significant damage, was no longer usable after the date of the collision, and was ultimately deemed a total loss by Liberty Mutual.

### 3. The Watts Plaintiffs' Transportation Expenses Coverage Claim

25.     Diane Watts called Liberty Mutual on April 15, 2023 to report a claim while still at the scene of the collision.

26.     Liberty Mutual informed Diane Watts that she had $900 of rental vehicle coverage on the Policy.

27.     On or about April 16, 2023, the Watts Plaintiffs, upon the recommendation of Liberty Mutual, availed themselves to the benefits provided by the Policy's Transportation Expenses Coverage and rented an automobile from Enterprise. *See* Enterprise Rental Agreement, attached as Exhibit "C."

28.     The Enterprise rental agreement set forth that the rental was to be returned by April 22, 2023. *Id.*

29.     On April 17, 2023, Diane Watts spoke with Liberty Mutual who advised her that, due to delays in the review and inspection of the damaged Vehicle, she could remain in the rental vehicle until April 29, 2023.

30.     On or about April 20, 2023, Liberty Mutual deemed the Watts Vehicle a total loss.

31.     Despite its earlier assurance to the contrary, and the explicit language of the Watts Policy, Liberty Mutual texted Diane Watts (seemingly using a form text message) in the early morning of April 20, 2023, upon deeming the Watts Vehicle a total loss, to advise that the Watts Vehicle had been totaled and that she would be permitted to remain in the rental vehicle obtained from Enterprise only for one week until April 27, 2023. The text message provided as follows:

> Good morning!  I wanted to let you know your vehicle has been declared a total loss. . . . Your settlement amount after deductible is $4,125.75.  I have extended your rental 7 days; **your last day of rental will be 4/27/23**.

Liberty Mutual 4/20/23 Text Message, attached as Exhibit "D" (emphasis added).

32.     Later that same day, Liberty Mutual contacted the Watts Plaintiffs by email (again seemingly using a form email template), advising the Watts Vehicle had been totaled and that their Transportation Expenses Coverage would be terminated in just seven days:

> As your Liberty Claims Representative, my goal is to make your claims experience as easy and worry-free as possible.  I'm writing you now to share the latest information about your claim.
>
> Based on our review, your vehicle was determined to be a 'total loss.'  This means we will issue a payment based on its pre-accident value (see table below).
>
> To ensure prompt payment, this letter covers all your claim settlement options and next steps, including:
> • How we determined your payment
> • How to receive prompt payment with completion of paperwork
> • Management of the rental car
> . . .

**Additional Information to Know**

**Length of Rental Coverage** – We will continue to pay for your rental car until 04/27/2023. **<u>After this date, payment for the rental vehicle will be your responsibility</u>**. However, you're welcome to stay in the rental as long as needed with our reduced rates.

Liberty Mutual 4/20/23 Email, attached as Exhibit "E" (emphasis in original and added).

33.     Liberty Mutual's form communications to the Watts Plaintiffs on April 20, 2023, were clear: their Transportation Expenses Coverage benefits were arbitrarily being terminated in seven days - on April 27, 2023.

34.     In providing the Watts Plaintiffs with only seven additional days of coverage, Liberty Mutual never provided the Watts Plaintiffs a written explanation of the specific basis in their policy, in relation to the facts, for terminating their Transportation Expenses Coverage benefits on April 27, 2023.

35.     Diane Watts returned the rental vehicle she obtained from Enterprise on April 29, 2023 – consistent with the verbal instructions that Liberty Mutual provided her on or about April 17, 2023.

36.     Nonetheless, Enterprise advised Diane Watts that the rental vehicle was due back two days earlier, on April 27, 2023, and as a result Diane Watts was forced to pay Enterprise approximately $77 out of pocket, representing two days of rental coverage.

37.     At the time Liberty Mutual terminated the Watts Plaintiffs' Transportation Expenses Coverage benefits, there remained an additional 18 days (at the maximum daily rate of $30 per day), and $540 in available coverage under the express terms of the insurance contract as detailed above.

38.     At the time Liberty Mutual terminated the Watts Plaintiffs' Transportation Expenses Coverage benefits, the amount of time reasonably required to replace the Watts Vehicle had not passed, and the Watts Plaintiffs had not received the full settlement value (as determined by Liberty Mutual) of the Watts Vehicle and had not replaced their vehicle.

39.     The Watts Plaintiffs were not reasonably able to replace their vehicle for several weeks after Liberty Mutual terminated their Transportation Expenses Coverage benefits.

40.     The Watts Policy does not allow for the termination of an insured's Transportation Expenses Coverage benefits in the event of a total loss earlier than thirty (30) days (the approximate amount of time that is equivalent to the Policy maximum of $900 of Transportation Expenses Coverage), unless and until a specific finding is made by Liberty Mutual that the time "reasonably required to … replace" an insured's vehicle is less than that time.

41.     Prior to terminating the Watts Plaintiffs' Transportation Expenses Coverage benefits, Liberty Mutual failed to make any specific determination or finding regarding the time period that the Watts Plaintiffs reasonably required to replace their vehicle. In other words, Liberty Mutual terminated the Watts Plaintiffs' Transportation Expenses Coverage benefits without conducting any investigation into whether the Watts Plaintiffs were afforded the time reasonably required to replace their vehicle.

42.     Liberty Mutual terminated the Watts Plaintiffs' Transportation Expenses Coverage benefits before the Watts Plaintiffs had a reasonable opportunity to locate, purchase, and/or lease a replacement vehicle of like kind and quality.

43.     Liberty Mutual's unequivocal statement on April 20, 2023, that the Watts Plaintiffs would not be able to recover any benefits under their policy's Transportation Expenses Coverage

after April 27, 2023, was unfounded, without any reasonable basis in fact, and was in breach of the terms of its contract.

44.    The Watts Policy does not authorize Liberty Mutual to arbitrarily terminate an insured's Transportation Expenses benefits seven days after determining the insured vehicle is a total loss or notifying an insured that their vehicle is a total loss.

45.    Because Liberty Mutual failed to conduct a good faith investigation and make a determination into the amount of time that the Watts Plaintiffs reasonably required to replace their vehicle, the Watts Policy contractually prohibited Liberty Mutual from limiting the Watts Plaintiffs' benefits to a time period of less than 30 days.

46.    Liberty Mutual issued payment in the amount of $360 for twelve (12) days of rental at $30 per day, for the time period beginning on April 16, 2023, and ending on April 27, 2023.

47.    As a result of Liberty Mutual's breach of contract, the Watts Plaintiffs are entitled to recover the remaining $540 of Transportation Expenses under their policy.

**B.    Adam Pizzitola**

**1.    The Pizzitola Plaintiff's Policy**

48.    On or about January 26, 2022, there was in full force and effect an automobile insurance policy, no. AOV-243-828039-40 1 4, between Pizzitola and Liberty Mutual (the "Pizzitola Policy"). *See* Pizzitola Policy Declarations, attached as Exhibit "F."[4]

49.    The Pizzitola Policy provides, among other things, insurance coverage for the use of Pizzitola's 2018 Nissan Kicks (the "Pizzitola Vehicle").

---

[4] Pizzitola possesses a copy of the declaration pages from his Liberty Mutual automobile insurance policy for the policy period beginning on April 22, 2021 and ending on April 22, 2022. The loss giving rise to Pizzitola's claim occurred on January 26, 2022. Plaintiff Pizzitola will request in discovery that Liberty Mutual provide a certified copy of the complete Pizzitola Policy in effect at the time of his loss.

50.     The Pizzitola Policy, in addition to other insurance benefits, contractually obligated Liberty Mutual to provide Pizzitola with coverage to rent a replacement vehicle in the event his vehicle was damaged in an accident. Just as in the Watts Policy, these benefits are referred to as Transportation Expenses Coverage. *See* Pizzitola Policy at Declarations p. 3 of 4, attached as Exhibit "F."

51.     Just as with the Watts Policy, the Pizzitola Policy's Transportation Expenses Coverage provides as follows:

### OPTIONAL TRANSPORTATION EXPENSES COVERAGE

When there is a loss to a **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for:

1.  Additional transportation expenses incurred by you for renting a substitute auto.

2.  Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto**.

3.  Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto**.

All coverage provided by this endorsement shall only apply once for any single occurrence.  Our payment will be limited to that period of time *reasonably required to repair or replace* **your covered auto** or the **non-owned auto**.

*See* Pizzitola Policy at Declarations p. 4 of 4, attached as Exhibit "F;" Form AS 2207 02 05, attached as Exhibit "G" (emphasis original and added).[5]

---

[5] While the Transportation Expenses Coverage form number for the Watts Policy is AS 2225 06 05, and the Transportation Expenses Coverage form number for the Pizzitola Policy is AS 2207

52.     The Pizzitola Policy's declarations page sets forth the length of time Transportation Expenses Coverage is available, and the maximum benefit recoverable:

Optional Coverages

Transportation Expenses      $30 Per Day

$900 Per Accident

*See* Pizzitola Policy at Declarations p. 3 of 4, attached as Exhibit "F." The maximum allowed amount of $900 constitutes thirty (30) days of Transportation Expenses Coverage at the "Daily Limit" of $30 (*i.e.*, $900 / $30 = 30 days).

### 2.  The Pizzitola Plaintiff's Accident

53.     On or about January 26, 2022, Pizzitola was involved in an automobile collision.

54.     As a result of the collision, the Pizzitola Vehicle suffered physical damage.

55.     As a result of the damage that the Pizzitola Vehicle suffered in the collision, the Pizzitola Vehicle was withdrawn from use for more than 24 hours.

56.     As a result of the collision, the Pizzitola Vehicle suffered significant damage, was no longer usable after the date of the collision, and was ultimately deemed a total loss by Liberty Mutual.

### 3.  The Pizzitola Plaintiff's Transportation Expenses Coverage Claim

57.     Pizzitola submitted a claim to Liberty Mutual on January 26, 2022 – the day of the accident.

58.     On or about January 26, 2022, Pizzitola availed himself of the benefits provided by his policy's Transportation Expenses Coverage and rented an automobile from Enterprise.

---

02 05, the relevant and operative language impacting Plaintiffs' Transportation Expenses Coverage benefits is identical.

59.     On or about February 2, 2022, Liberty Mutual determined the Pizzitola Vehicle to be a total loss and provided him with a vehicle valuation report. *See* Liberty Mutual Emails, pp. 7-9, attached as Exhibit "H."

60.     At that time, Liberty Mutual set a termination date of February 8, 2023, for Pizzitola's Transportation Expenses Coverage claim, after which time Liberty Mutual refused to cover any expenses he incurred for a rental vehicle.

61.     On February 3, 2022, Pizzitola expressed concern to Liberty Mutual over his ability to get a replacement vehicle. *See* Liberty Mutual Emails, pp. 4-6, attached as Exhibit "H."

62.     Later that evening, Pizzitola wrote to Liberty Mutual questioning Defendants' valuation of the Pizzitola Vehicle, noting that "every penny matters because I'm going to have to get a 2nd job on top of my full time job to be able to afford the monthly payments." *See* Liberty Mutual Emails, pp. 4-5, attached as Exhibit "H."

63.     On February 4, 2023, Pizzitola requested an extension of the Transportation Expenses Coverage. *See* Liberty Mutual Emails, pp. 3-4, attached as Exhibit "H."

64.     On February 7, 2023, Pizzitola again requested an extension of his Transportation Expenses Coverage:

> Can you please extend the rental or do I need to call Enterprise to extend it under my claim, because I will not have a new vehicle by tomorrow.

*See* Liberty Mutual Emails, p. 3, attached as Exhibit "H."

65.     On February 8, 2023, Liberty Mutual rejected Pizzitola's request to extend his Transportation Expenses Coverage:

> Morning sir, I totally get it I would do the same thing.  In regards to rental I am unable to extend it out any more.  The last day is today 2/8 if you would like to keep it past today that is fine it will just be an out of pocket expenses from this point forth.  If you are deciding to keep it please make sure you reach out to Enterprise to make them aware.  Hope you have a great day sir.

*See* Liberty Mutual Emails, p. 2, attached as Exhibit "H."

66.     Pizzitola brought to Liberty Mutual's attention that he had only used 13 days of his

Transportation Expenses Coverage, leaving a significant number of rental days still available under

his policy:

> Why can't the rental be extended under Liberty Mutual?  I have $900 in rental coverage at $30 a day = 30 days of rental coverage.  It's only been 13 days.  I don't have the financial ability to pay out of pocket yet alone a car to replace the rental.

*See* Liberty Mutual Emails, pp. 1-2, attached as Exhibit "H."

67.     Liberty Mutual responded to Pizzitola's inquiry, revealing that their *standard*

*operating procedure* is to breach, ignore, and deviate from their policy language by refusing to

make an actual determination of the amount of time reasonably required to replace a vehicle once

deemed a total loss:

> **Rental are managed, and you are given 7 days from the day your vehicle is deemed a total loss to be covered by us.  Your vehicle was deemed a total loss on 2/1/23 which makes today the 7[th] day.  <u>That is standard operating procedure for all total loss claims sir.</u>**  You will be covered through the end of business day today sir, anything after that will have to be out of pocket.

*See* Liberty Mutual Emails, p. 1, attached as Exhibit "H" (emphasis added).

68.     Liberty Mutual's communication to Pizzitola was clear: his Transportation

Expenses Coverage benefits were being terminated as of February 8, 2023.

69.     Liberty Mutual never provided Pizzitola with a written explanation of the specific

basis in the Pizzitola Policy, in relation to the facts, for terminating his Transportation Expenses

Coverage benefits on February 8, 2023.

70.     Pizzitola returned his rental vehicle obtained from Enterprise on February 9, 2023,

and as a result paid out-of-pocket for the additional day of rental.

71.    At the time Liberty Mutual terminated Pizzitola's Transportation Expenses Coverage, there remained an additional 17 days, and $510 in available coverage under the contract for which Pizzitola paid valuable consideration in exchange for the benefits guaranteed under the agreement.

72.    At the time Liberty Mutual terminated Pizzitola's Transportation Expenses Coverage benefits, the amount of time reasonably required to replace the Pizzitola Vehicle had not passed, Pizzitola had not secured a replacement vehicle, and he had not received the full settlement value of the Pizzitola Vehicle.

73.    The Pizzitola Policy does not allow for the termination of an insured's Transportation Expenses Coverage benefits in the event of a total loss earlier than thirty (30) days (the approximate amount of time that is equivalent to the Policy maximum of $900 of Transportation Expenses Coverage), unless and until a specific finding is made by Liberty Mutual that the time "reasonably required to … replace" an insured's vehicle is less than that time.

74.    Prior to terminating Pizzitola's Transportation Expenses Coverage benefits, Liberty Mutual failed to make any specific finding regarding what time period he reasonably required to replace the Pizzitola Vehicle. In other words, Liberty Mutual terminated Pizzitola's Transportation Expenses Coverage benefits without conducting any investigation into whether he was afforded the time reasonably required to replace his vehicle.

75.    Liberty Mutual terminated Pizzitola's Transportation Expenses Coverage benefits before he had a reasonable opportunity to locate, purchase, and/or lease a replacement vehicle of like kind and quality.

76.    Liberty Mutual's unequivocal statement on February 8, 2023, that Pizzitola would not be able to recover any benefits under the Policy's Transportation Expenses Coverage after that

day, was unfounded, without any reasonable basis in fact, and was in breach of the terms of its contract with Pizzitola.

77.    The Pizzitola Policy does not authorize Liberty Mutual to arbitrarily terminate an insured's Transportation Expenses Coverage benefits seven days after determining the insured vehicle is a total loss or notifying an insured that their vehicle is a total loss.

78.    Because Liberty Mutual failed to conduct a good faith investigation and make a determination into the amount of time that Pizzitola reasonably required to replace his vehicle, the Pizzitola Policy contractually prohibited Liberty Mutual from limiting his benefits to a time period less than 30 days.

79.    Liberty Mutual issued payment in the amount of $390 for thirteen (13) days of rental at $30 per day, for the time period beginning on January 27, 2023, and ending on February 8, 2023.

80.    As a result of Defendants' breach, Pizzitola is entitled to recover the remaining $510 of Transportation Expenses under the Policy.

## CLASS ACTION ALLEGATIONS

81.    Liberty Mutual's conduct toward Plaintiffs is not unique but is uniform across members of the proposed Class and Subclasses defined below.

82.    Liberty Mutual wrote and/or issued automobile insurance policies within Missouri, Illinois, and throughout the country, which included a Transportation Expenses Coverage provision in substantially the same form as the one in the Watts Policy and Pizzitola Policy (the "Policies").

83.    Liberty Mutual processed, adjusted, and handled Class members' Transportation Expenses Coverage claims under the Policies, including the Policies issued to the Watts and

Pizzitola, in a substantially similar manner: by prematurely terminating Transportation Expenses Coverage without making any determination as to the amount of time reasonably required to obtain a substitute vehicle.

84.    In fact, Liberty Mutual has a policy and/or practice of terminating Transportation Expenses Coverage benefits in a predetermined number of days following its determination that an insured vehicle is a total loss. It is Liberty Mutual's "standard operating procedure" to do so.

85.    To that effect, Liberty Mutual provides manuals, instructions, direction, and/or training to employees, agents, and/or other personnel regarding the policies and procedures to be used in processing and adjusting of total loss claims, and handling an insured's Transportation Expenses Coverage claim arising under automobile insurance policies.

86.    This uniform conduct by Liberty Mutual is a systematic breach of its Policies issued to Plaintiffs and the substantially similar Policies issued to members of the proposed Class and Subclasses that require Liberty Mutual to pay Transportation Expenses Coverage for 30 days, or until it determines that an earlier period of time was sufficient to reasonably replace a covered vehicle.

87.    As a result of its breaches as set forth in detail herein, Plaintiffs and members of the Class and Subclasses defined below have been uniformly injured when they received less payment for Transportation Expenses Coverage than Liberty Mutual was contractually obligated to provide.

88.    This action is brough individually and as a class action pursuant to Federal Rule of Civil Procedure 23.

89.    Plaintiffs seek to represent all members of the following Class:

> All insureds in the United States who have been policyholders of automobile insurance policies sold by Liberty Mutual that included

Optional Transportation Expenses Coverage, who, within the applicable statute of limitations, have made a claim to Liberty Mutual for Transportation Expenses Coverage as a result of a total loss of a vehicle damaged in a covered loss, and as to whom Liberty Mutual limited the amount of time such coverage is provided to a period of time less than thirty (30) days (the "Class").

90.    Alternatively, the Watts Plaintiffs and Pizzitola seek to represent all members of the following Subclasses:

The Watts Plaintiffs:

All insureds who are members of the Class and who resided in Missouri at the time their vehicles suffered damage that resulted in Liberty Mutual determining their vehicles were a total loss (the "Missouri Subclass").

Pizzitola:

All insureds who are members of the Class and who resided in Illinois at the time their vehicles suffered damaged that resulted in Liberty Mutual determining their vehicles were a total loss (the "Illinois Subclass").

91.    Excluded from the Class and Subclasses are Liberty Mutual and each of Defendants' parents, subsidiaries, authorized distributors and affiliates, and their legal representatives, heirs, successors, and assigns of any excluded person.

92.    Plaintiffs reserve the right to amend the Class and Subclass definitions above and/or to identify additional subclasses upon completion of discovery and/or class certification, or the identification and joinder of additional class representatives.

93.    The Class and Subclasses are each so numerous that joinder of all members is impracticable. Although the exact number and identities of Class and Subclass members are presently unknown, the number can easily be ascertained from Liberty Mutual's records, databases, and appropriate discovery.

94.     There are questions of fact and law which are common to the Class and Subclasses that predominate over any questions affecting only individual Class and Subclass members. Among the common questions of law and facts are the following, without limitation:

a.     Whether Liberty Mutual had a policy and practice of selling automobile insurance policies to insureds with Transportation Expenses Coverage as set forth in the Policies, without disclosing to Plaintiffs and the members of the Class and Subclasses that Liberty Mutual will terminate Transportation Expenses Coverage before the expiration of a thirty (30) day period, and without conducting an analysis or making a finding as to the time period reasonably required to replace the covered vehicle, as required by the policies;

b.     Whether Liberty Mutual had a policy and practice of selling automobile insurance policies to insureds with Transportation Expenses Coverage as set forth in the Policies without disclosing to Plaintiffs and members of the Class and Subclasses that Liberty Mutual would prematurely terminate Transportation Expenses Coverage benefits based upon terms not found in the Policies, if the insured's vehicle was a total loss, and without conducing an analysis or making a finding as to what time period is reasonably required to replace the covered vehicle, as mandated by the Policies;

c.     Whether Liberty Mutual's policy and practice of terminating Transportation Expenses Coverage benefits earlier than thirty (30) days without conducing an analysis or making a finding as to what time period is reasonably required to replace the covered vehicle, is a material reduction of benefits provided by the Policies, which is imposed without any basis;

d.     Whether Liberty Mutual's policy and practice of terminating Transportation Expenses Coverage benefits earlier than thirty (30) days without conducing an analysis or making

a finding as to what time period is reasonably required to replace the covered vehicle, is a breach of the Policies;

e.      Whether Liberty Mutual had a policy and practice of misrepresenting pertinent facts or policies or contract provisions related to Transportation Expenses Coverage benefits;

f.      Whether Liberty Mutual failed to adopt and implement reasonable standards for the prompt investigation of claims; and

g.      Whether Liberty Mutual had a policy and practice of failing to promptly provide a reasonable explanation of the basis in the Policies in relation to the facts or applicable law for the denial of a claim.

95.      Plaintiffs' claims are typical of the claims of the other members of the Class and Subclasses inasmuch as all such claims arise out of Liberty Mutual's prior and current standard policies and practices relating to Transportation Expenses Coverage limitations found in the applicable Policies, and Plaintiffs will assert and pursue the same claims as other members of the Class and Subclasses.

96.      Plaintiffs have no interests antagonistic to the interests of the other members of the Class or Subclasses. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and insurance litigation. Accordingly, Plaintiffs are adequate representative of, and will fairly and adequately protect the interests of the Class and Subclasses as set forth herein.

97.      Class certification is appropriate because Liberty Mutual has acted or refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

98.     Class certification is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, the vast majority of Class and Subclass members likely would not be in a position to litigate their claims individually and would have no effective remedy at law through which to vindicate their claims against Defendants and be made whole. Class treatment of predominating common questions of law and fact is also superior to multiple individual actions, in that class treatment will conserve the resources of the courts and the litigants and will further the efficient adjudication of the claims of the Class and Subclasses.

<u>**COUNT I**</u>
**BREACH OF CONTRACT**
*Brought by Plaintiffs, individually and on behalf of the Class and/or Subclasses*

99.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

100.     Plaintiffs and Class members paid Liberty Mutual premiums as consideration for issuing the Policies.

101.     The Policies constituted valid contracts and were in full force and effect at the time of the motor vehicle accidents involving Plaintiffs and Class members.

102.     The Policies imposed upon Liberty Mutual an agreement and a duty to use good faith and apply fair dealing toward Plaintiffs and the Class, its insureds, in handling all claims made under the Policies.

103.     Plaintiffs and Class members have satisfied all their obligations under the Policies, including, but not limited to, all conditions precedent and all conditions subsequent.

104.     Liberty Mutual materially breached the obligations under the Policies and the law by:

      a.     Failing to properly handle the claims of Plaintiffs and Class members;

b. Failing to objectively and fairly evaluate the claims of Plaintiffs and members of the Class;

c. Concocting, creating, and imposing purported policy limitations without a reasonable basis in the Policy, fact or law;

d. Concocting, creating, and imposing an unreasonable and self-serving interpretation of the Policies in order to wrongfully withhold and/or reduce benefits due to Plaintiffs and Class members under the applicable Policies;

e. Using claims handling techniques designed to systematically deny and/or reduce payments and prevent claim evaluations;

f. Denying, limiting, and/or reducing the coverage provided by the Policies without satisfying the necessary conditions precedent to impose such denials, limitations, and/or reductions; and

g. Denying, limiting, and/or reducing the claims of Plaintiffs and Class members without any reasonable basis in fact or law; and/or otherwise unreasonably and unfairly withholding benefits due under the Policies to Plaintiffs and Class members.

105. The Policies impose upon Liberty Mutual the obligation to determine the amount of time insureds reasonably require to replace their vehicles prior to terminating and/or limiting their Transportation Expenses Coverage benefits.

106. Liberty Mutual materially breached its obligations under the Policies by, without limitation, informing their insureds that their Transportation Expenses Coverage benefits would be terminated after a total loss without making a determination of the amount of time reasonably required to replace those covered vehicles.

107.    As a direct and proximate result of the foregoing acts and/or omissions of Liberty Mutual, Plaintiffs and Class (and Subclass) members were damaged in an amount to be determined at trial.

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class/or Subclass members, demand judgment against Defendants in an amount to be determined at trial, plus additional compensatory and/or consequential damages allowed by law, together with interest, court costs, and such other relief as this Honorable Court shall deem just and proper.

**COUNT II**
**VEXATIOUS CONDUCT, Mo. Rev. Stat. § 375.420**
*By the Watts Plaintiffs, individually and on behalf of the Missouri Subclass*

108.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

109.    Liberty Mutual failed to make a determination of the amount of time the Watts Plaintiffs and Missouri Subclass members reasonably required to replace their totaled vehicles prior to terminating benefits available to them under the Transportation Expenses Coverage provision.

110.    Liberty Mutual's application of the provisions of Transportation Expenses Coverage found in the Policies is contrary to the express terms of the Policies.

111.    Liberty Mutual misrepresented and failed to disclose the coverage it offered to the Watts Plaintiffs and Missouri Subclass members through the Transportation Expenses Coverage provision.

112.    Liberty Mutual terminated benefits owed to the Watts Plaintiffs and Missouri Subclass members purportedly pursuant to the Transportation Expenses Coverage provision without conducting a reasonable investigation into the amount of time required to replace the insured vehicles.

113.    Liberty Mutual refused to issue payment to the Watts Plaintiffs and Missouri Subclass members owed pursuant to the Transportation Expenses Coverage provision.

114.    Liberty Mutual lacked reasonable or probable cause or excuse to withhold benefits owed to the Watts Plaintiffs and Missouri Subclass members pursuant to the Transportation Expenses Coverage provision.

115.    As a result of the above conduct, the Watts Plaintiffs and Missouri Subclass members are entitled to recover attorneys' fees, interest, and additional damages of 20% of the first $1,500 of loss and 10% of the amount of loss in excess of $1,500. *See* Mo. Rev. Stat. § 375.420.

WHEREFORE, the Watts Plaintiffs and Missouri Subclass hereby demand judgment against Defendants in an amount to be determined at trial, plus the statutory penalty, consequential damages, interest, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF § 155 ILLINOIS INSURANCE CODE**
*By Plaintiff Adam Pizzitola, individually and on behalf of the Illinois Subclass*

116.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

117.    At all times relevant to this Complaint, there has been in force in Illinois § 155 of the Illinois Insurance Code, which provides, in pertinent part:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

118.    Pizzitola and the Illinois Subclass members are entitled to an award under § 155 of the Illinois Insurance Code as a result of Liberty Mutual engaging in the following vexatious and unreasonable conduct:

    a.   Failing to make a determination of the amount of time Pizzitola and the Illinois Subclass members reasonably required to replace their totaled vehicles prior to terminating benefits available to them under the Transportation Expenses Coverage;

    b.   Applying the provisions of Transportation Expenses Coverage found in the Policies in a manner contrary to the express terms of the policies;

    c.   Misrepresenting the coverage available to Pizzitola and the Illinois Subclass members through the Transportation Expenses Coverage provision;

    d.   Failing to disclose the coverage available to Pizzitola and the Illinois Subclass members through the Transportation Expenses Coverage provision;

    e.   Terminating benefits owed to Pizzitola and the Illinois Subclass members purportedly pursuant to the Transportation Expenses Coverage provision without conducting a reasonable investigation into the amount of time required to replace the insured vehicles;

    f.   Refusing to issue payment to Pizzitola and the Illinois Subclass members owed pursuant to the Transportation Expenses Coverage provision, despite lacking reasonable or probable cause to withhold such payments; and

g.  Failing to objectively evaluate the claims of Pizzitola and the Illinois Subclass members.

WHEREFORE, Plaintiff Adam Pizzitola and the Illinois Subclass demand judgment against Defendants, in an amount to be determined at trial, plus the statutory penalty, consequential damages, interest, reasonable attorneys' fees and costs, and such other relief as this Court deems just and proper.

**COUNT IV**
**DECLARATORY JUDGMENT**
*By Plaintiffs, individually and on behalf of the Class and Subclasses*

119.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth here.

120.    By their terms, the Policies provide that Liberty Mutual "will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for ... [a]dditional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto**."

121.    The Policies dictate only one authorized justification for Liberty Mutual to limit rental benefits to less than the time provided for in the Policies' declarations pages: "Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto**."

122.    The limitation contained in the Policies' Transportation Expenses Coverage provision imposes upon Liberty Mutual the obligation to investigate and make a determination as to the amount of time insureds reasonably require to replace their vehicles prior to terminating and/or limiting their rental benefits.

123.    Liberty Mutual has a policy and/or practice of terminating an insured's Transportation Expenses Coverage benefits after a total loss to less than 30 days without

determining the amount of time reasonably required to replace an insured vehicle as required under the Policies.

124.    Plaintiffs continue to insure their vehicles with Liberty Mutual and continue to maintain and pay valuable consideration for the Transportation Expenses Coverage.

125.    An actual controversy exists because Plaintiffs paid a specific additional premium to receive the coverage afforded by the Transportation Expenses Coverage provision found in the Policies, and Liberty Mutual had adopted policies and/or procedures that deprive Plaintiffs (and the Class) of the benefits they purchased.

WHEREFORE, Plaintiffs and the Class respectfully request that this Honorable Court:

a.    Declare that the Policies impose upon Liberty Mutual an obligation to determine the amount of time insureds reasonably required to replace their vehicles prior to terminating and/or limiting their benefits under the Transportation Expenses Coverage provision; and

b.    Provide injunctive relief prohibiting Liberty Mutual from improperly terminating Transportation Expenses Coverage found in the Policies prior to the expiration of the thirty (30) days of coverage afforded, in the absence of a determination of the amount of time an insured reasonably requires to replace their totaled automobile; and

c.    Grant such other relief as this Honorable Court deems just and proper.

Dated: November 21, 2023                    Respectfully submitted,

Julie Selesnick, MA BBO No. 650968
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, Suite 300
Washington D.C. 20006
Telephone: (202) 221-5279

Fax: (215) 875-4604
Email: jselesnick@bm.net

Shanon Carson*
Y. Michael Twersky*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone: (215) 875-4656
scarson@bm.net
mitwersky@bm.net

John G. Albanese*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999
jalbanese@bm.net

Richard M. Ochroch*
Brett N. Benton*
Andrew R. Ochroch*
**RICHARD M. OCHROCH & ASSOCIATES, P.C.**
318 S. 16th Street
Philadelphia, PA  19102
Telephone: (215) 735-2707
rochroch@ochroch-law.com
bbenton@ochroch-law.com
aochroch@ochroch-law.com

*Attorneys for Plaintiffs*

*pro hac vice* motions to be filed