UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WATTS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. |
| v. ) | 23-12845-BEM |
| ) | |
| LIBERTY MUTUAL PERSONAL ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER ON
# DEFENDANT'S MOTION TO STRIKE AND EXCLUDE PLAINTIFFS' EXPERT

**MURPHY, J.**

Plaintiffs Diane Watts, Anthony Watts, and Adam Pizzitola (collectively, "Plaintiffs") individually and on behalf of all other persons similarly situated,[1] brought this suit against Defendants Liberty Mutual Personal Insurance Company ("LMPIC") and Liberty Mutual Insurance Company ("LMIC") (collectively, "Defendants"), alleging that Defendants prematurely terminated rental car benefits in breach of their insurance policies. Before the Court now is LMIC's motion to strike and exclude the opinions of Plaintiffs' expert, Jay Angoff. For the reasons set forth below, LMIC's motion is DENIED.

---

[1] Plaintiffs seek to certify a class of plaintiffs in a separate motion for class certification, Dkt. 100, which is not yet ripe for this Court's review.

I.     **Relevant Background**

Plaintiffs purchased car insurance policies from LMPIC.[2] In relevant part, the policies contained an Optional Transportation Expenses Coverage endorsement which provided that, in the event of an accident, LMPIC would pay the expense of a rental vehicle while repairs were performed on the damaged vehicle. If the vehicle was declared a total loss, then LMPIC would pay for a rental vehicle for the "period of time reasonably required" to replace the total loss vehicle, up to a maximum of 30 days, or $900.

Plaintiffs filed this case on November 21, 2023, and filed an amended complaint on February 23, 2024.[3] Each Plaintiff alleges that after a car accident in which they received access to and payment for a rental vehicle, LMPIC and LMIC prematurely terminated the rental car coverage, despite the contractual obligation to first determine the amount of time a policyholder reasonably needs to replace their totaled vehicle.

After LMIC moved for summary judgment, Plaintiffs opposed the motion by citing to, in relevant part, the expert report of Jay Angoff (Dkt. 98-36 ("Angoff Report")). In his report, Mr. Angoff concludes that LMPIC could not satisfy any judgment rendered against it by Plaintiffs and offers various opinions about the impact of LMPIC's reinsurance agreement with LMIC, whether LMPIC "acts independently" of LMIC, and LMPIC's finances.

On May 16, 2025, LMIC moved to strike and exclude the opinions of Mr. Angoff pursuant to Federal Rule of Civil Procedure 56(c)(2) and Rule of Evidence 702. The Court held an evidentiary and *Daubert* hearing on July 21, 2025, and took the matter under advisement.

---

[2] The parties dispute whether LMIC is also a party to the contracts (and thus whether the obligations of LMPIC also applied to LMIC). This dispute has no bearing on the present motion.

[3] Both the initial and amended complaints named Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company, Inc. as additional defendants, but those entities were dismissed without prejudice on May 4, 2024. Dkt. 58.

## II.     **Standard of Review**

The material relied on to support or dispute a fact in connection with a motion for summary judgment must be admissible in evidence. *See* Fed. R. Civ. P. 56(c); *see also Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2721, at 40 (2d ed. 1983)) (explaining that at summary judgment stage, "a court may take into account any material that would be admissible or usable at trial"). Notwithstanding, "[s]ome forms of evidence, such as affidavits and declarations, may be considered on summary judgment even if they would not be admissible at trial, as long they 'set out facts that would be admissible in evidence' if the affiant or declarant testified to them at trial." *Silva v. Town of Uxbridge*, 771 F. Supp. 3d 56, 67 (D. Mass. 2025) (quoting Fed. R. Civ. P. 56(c)(4)).

Generally, an expert opinion is admissible evidence that can be relied upon for summary judgment purposes. *See Damon v. Hukowicz*, 964 F. Supp. 2d 120, 131 (D. Mass. 2013) ("It is well established . . . that '[n]onmovants may rely on the affidavits of experts in order to defeat a motion for summary judgment [although] such evidence must still meet the standards of Rule 56.'" (second and third alterations in original) (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993))). Under Federal Rule of Evidence 702[4] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), trial judges act as gatekeepers to "insur[e] that the

---

[4] Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

3

fact-finding process does not become distorted by 'expertise that is fausse and science that is junky.'" *Fed. Ins. Co. v. Pentair Residential Filtration, LLC*, 2013 WL 6145531, at *3 (D. Mass. Nov. 21, 2013) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 159 (1999) (Scalia, J., concurring)). "[T]he party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance." *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 71 (1st Cir. 2024) (quoting *Milward v. Rust-Oleum Corp.* ("*Milward II*"), 820 F.3d 469, 473 (1st Cir. 2016)). However, "[u]nder First Circuit precedent, exclusion of an expert report at summary judgment is only warranted when the report's 'defects are obvious on the face of [the] proffer.'" *SonicSolutions Algae Control, LLC v. Diversified Power Int'l, LLC*, 722 F. Supp. 3d 16, 47 (D. Mass. 2024) (alteration in original) (quoting *Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997)).

The "threshold question" is "whether the witness is sufficiently qualified by 'knowledge, skill, experience, training, or education' to give his proffered opinion." *Neural Magic, Inc. v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 152 (D. Mass. 2023) (quoting Fed. R. Evid. 702). If the witness is deemed qualified as an expert on the topic at issue, the judge must then determine whether the specific testimony offered in the case "both rests on a reliable foundation and is relevant to the task at hand." *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 52 (1st Cir. 2016) (quoting *Daubert*, 509 U.S. at 597). As long as the expert's testimony is found to rest upon reliable grounds, "the traditional and appropriate means of attacking shaky but admissible evidence" is through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Milward v. Acuity Specialty Prods. Grp., Inc.* ("*Milward I*"), 693 F.3d 11, 15 (1st Cir. 2011) (quoting *Daubert*, 509 U.S. at 590).

4

**III.    Discussion[5]**

Defendants contend that the Court should strike the Angoff Report under Rule 702 and *Daubert* because Mr. Angoff is not qualified to render the opinions in his report and because Mr. Angoff's opinions are not reliable. The Court addresses each in turn.

    **1.    Qualifications**

Under the Federal Rules of Evidence, an expert must be "qualified" by "knowledge, skill, experience, training, or education" to give an opinion. *United States v. Montijo-Maysonet*, 974 F.3d 34, 47 (1st Cir. 2020) (quoting Fed. R. Evid. 702). "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (citing *Daubert*, 509 U.S. at 588). While an "expert 'should have achieved a meaningful threshold of expertise' in the given area[,] . . . expert witnesses need not have overly specialized

---

[5] In passing, Defendants argue that Mr. Angoff's expert disclosure is untimely and inadmissible hearsay that is not appropriate to consider on summary judgment. *First*, the disclosure is not untimely. While Defendants take issue with the fact that the disclosure "was not until more than a year" after Defendants propounded a request for production related to expert reports, "when Plaintiffs filed their Opposition and included Angoff's Report as Exhibit 36," Dkt. 109 ("Mem.") at 6, under Rule 26(a), expert disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a). Defendants identify no authority to suggest that a party's discovery requests may alter this Court's order regarding the timing of expert disclosures. *See* Mem. at 6. The Court will not treat the Angoff Report as untimely when it was disclosed within the timeframe provided by the scheduling order. *See* Dkt. 78. Any inconvenience to Defendants as a result of Plaintiffs' disclosure timing is the result of Defendants filing a motion for summary judgment prior to the close of fact discovery.

*Second*, the Court will not disregard the Angoff Report as hearsay. An expert "report is a quintessential example of hearsay." *Jones ex rel. U.S. v. Mass. Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015). The Angoff Report was initially sworn neither under oath nor under penalty of perjury, which would normally render it inadmissible hearsay unsuitable for consideration on summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (excluding expert report from consideration on summary judgment as hearsay because "the purported substance of [the expert's] testimony was not verified by him" and noting that "[a] third party's description of an expert's supposed testimony is not suitable grist for the summary judgment mill"); *Ramirez-Ortiz v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, 32 F. Supp. 3d 83, 88 (D.P.R. 2014) (finding unsworn expert report constituted inadmissible hearsay that could not be considered as part of the summary judgment record). However, a party may cure a defective expert report of its hearsay problem by subsequently affirming the report under oath. *See García-Navarro v. Hogar La Bella Unión, Inc.*, 2022 WL 11266460, at *15 n.19 (D.P.R. Oct. 18, 2022) (citing cases); *cf. Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 29 n.20 (1st Cir. 2005) (noting that district court erred in declining to consider an unsworn export report on summary judgment, where the report was separately sworn to by affidavit). Here, Plaintiffs have submitted a supplemental declaration from Mr. Angoff, in which he reaffirmed his prior report under penalty of perjury. Dkt. 126-1 at 1. As such, the Angoff Report is not inadmissible at summary judgment as hearsay.

knowledge to offer opinions." *Id.* (citations omitted). "In non-technical areas, long experience in a field can confer expertise upon a witness." *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 358 (D. Mass. 2008) (citing *Den Norske Bank AS v. First Nat'l Bank of Bos.*, 75 F.3d 49, 57 (1st Cir. 1996). That said, "the fact [t]hat a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields." *Hasted v. United States*, 2022 WL 17404918, at *2 (D. Mass. Dec. 2, 2022) (alteration in original) (internal quotation marks omitted) (quoting *Levin*, 459 F.3d at 78). "It is well-settled that trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses." *United State v. Vargas*, 471 F.3d 255, 262 (1st Cir. 2006) (quoting *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 30 (1st Cir. 2000)).

Mr. Angoff opines in his report that (1) LMPIC does not have $1 billion available in reserves to pay a judgment, and (2) LMPIC could not access its $16 million in assets to pay a judgment because a claim or judgment must be paid out of reserves. Angoff Report at 10. Defendants argue that Mr. Angoff is not qualified to render these opinions because he "lacks any education, training, or experience in the field of accounting or financial advisory, or reinsurance" and has no relevant professional certifications or degrees. Dkt. 109 ("Mem.") at 8–9.

Plaintiffs emphasize that, while Mr. Angoff is an attorney,[6] he has had a long career working in the insurance industry. Dkt. 126 ("Opp.") at 11–12. At various times over the past 40 years, he has served as the Insurance Commissioner for the State of Missouri, as the Deputy Insurance Commissioner for the State of New Jersey, as the Director of the U.S. Health Care

---

[6] Defendants also argue that "Angoff lacks any education, training, or experience in the field of accounting or financial advisory, or reinsurance, and instead comes to this engagement as a lawyer with a Juris Doctor." Mem. at 8. Plaintiffs argue that "merely being a lawyer does not disqualify one as an expert witness." Opp. at 11 (quoting *Waco Intern., Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002)). While the fact that Mr. Angoff is an attorney does not automatically disqualify him as an expert in this case, it also does not address the issue of whether he is qualified.

6

Financing Administration's Private Health Insurance Group, and as the Director of the HHS Office of Consumer Information and Insurance Oversight. Angoff Report at 13–14. During the *Daubert* hearing, Mr. Angoff provided additional details on his experience, including explaining how, in each role, he would regularly review and analyze the financial statements of insurance companies. *See, e.g.*, July 21 Rough Hr'g Tr. at 9:9–16 (describing experience analyzing the financial statements of insurance companies); *id.* at 82:18–83:5 (describing 40 years of experience in insurance industry reviewing financial statements); *id.* at 83:16–18 (testifying that he has reviewed "[h]undreds" of financial statements throughout his career); *id.* at 84:20–90:25 (describing how various prior experience involved reviewing financial statements).[7] Though Mr. Angoff has not served as an expert specifically on financial statements, given this extensive history upon which he renders his opinions, the Court concludes that he is appropriately qualified in this case. *See Ji*, 538 F. Supp. 2d at 358–59 (finding expert qualified where she had 20 years of experience in the field and "reportedly ha[d] extensive experience in working with the forms at issue in th[e] case"). Defendants' attacks on Mr. Angoff's lack of qualifications or specific certifications are an appropriate line of inquiry for cross-examination, but such bases do not disqualify him from serving as an expert in this case. *See Vargas*, 471 F.3d at 262 ("It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications." (quoting *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir. 2006))).

---

[7] Mr. Angoff also detailed his knowledge and experience with various types of insurance arrangements between companies and familiarity with relevant insurance and financial concepts. *See, e.g.*, July 21 Rough Hr'g Tr. at 28:23–34:11 (discussing fronting agreements); *id.* at 38:1–39:8 (discussing reinsurance agreements); *id.* at 39:9–41:10 (discussing reserve calculations).

## 2. Reliability

### a. Sufficiency of the Data

Defendants argue that Mr. Angoff's opinions related to LMPIC's reserves are unreliable because they are based on plainly erroneous assumptions and cherry-picked facts. Mem. at 9–12. Plaintiffs contend that Defendants' arguments more properly go to weight and credibility, which should be left to the jury to assess. Opp. at 13–15.

Expert testimony must be "based on sufficient facts or data." Fed. R. Evid. 702. "Although an expert's methodology is the 'central focus of a *Daubert* inquiry,' courts 'may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable.'" *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 99 (1st Cir. 2020) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). "However, district courts must not 'unduly scrutinize[ ] the quality of the expert's data,' because such scrutiny 'usurps the role of the jury.'" *Id.* (alteration in original) (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 805 (7th Cir. 2013)). "There is an important difference . . . between what is *unreliable* support and what a trier of fact may conclude is *insufficient* support for an expert's conclusion." *Martínez v. United States*, 33 F.4th 20, 24 (1st Cir. 2022) (quoting *Milward I*, 693 F.3d at 22). The First Circuit has explained that "'[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony' and thus 'a question to be resolved by the jury.'" *Rodríguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024) (quoting *Milward I*, 639 F.3d at 22 (citation omitted)).

Mr. Angoff's opinions are predominantly based off LMPIC's and LMIC's 2023 accounting statements, from which Mr. Angoff has drawn various conclusions based on his experience in the insurance industry reviewing and analyzing financial statements. *See, e.g.*, July 21, 2025 Rough

Hr'g Tr. at 79:19–80:11. There is no dispute that the accounting statements and the other record evidence considered by Mr. Angoff are a reliable basis on which he could form an opinion. *See* Mem. at 11 (making arguments based on information in LMPIC's 2023 Annual Statement). While Defendants contend that Mr. Angoff's opinions are based on mistaken assumptions that account only for net numbers and ignore gross numbers, such a challenge is not an appropriate basis for exclusion at this junction. *See, e.g.*, *Pagliaroni v. Mastic Home Exteriors, Inc.*, 2015 WL 5568624, at *8 (D. Mass. Sept. 22, 2015) ("The First Circuit has repeatedly held that a challenge to the factual underpinning of an expert's opinion is a matter affecting the weight and credibility of the testimony—a question to be resolved by the jury." (citation and internal quotation marks omitted)); *Waters v. Town of Ayer*, 2009 WL 10728967, at *6 (D. Mass. Apr. 6, 2009) ("Any failure by [the expert] to consider facts that the defendants deem to be important may impact the weight of his testimony, but does not warrant a conclusion that the testimony lacks a reliable foundation and is inadmissible." (citing *Currier v. United Techs. Corp.*, 393 F.3d 246, 252 (1st Cir. 2004))).

It is entirely possible that Mr. Angoff's reading of the accounting statements is incorrect.[8] But on the record before it, the Court cannot draw that conclusion, nor would it be appropriate for the Court to do so. *See Ruiz-Troche*, 161 F.3d at 85 ("*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon 'good grounds, based

---

[8] The dispute between the parties appears to be about the impact of the reinsurance agreement between LMPIC and LMIC, which entity controls the money that would be used to pay a judgment, and the legal impact of that control. Mr. Angoff has opined that because LMPIC cedes its premiums and losses to LMIC, it retains nothing from which it could pay a judgment. *See, e.g.*, July 21, 2025 Rough Hr'g Tr. at 65:20–66:8. By Defendants' own argument, "[t]he money ceded to LMIC is then used to, among other things, reimburse LMPIC for 100% of its claim expenses and create sufficient reserves to pay claims by LMPIC's policyholders going forward." Mem. at 10. This arguably supports Mr. Angoff's contention that the money for a judgment would have to come from LMIC. While Defendants claim that this conclusion is incorrect, in the present posture, the Court does not have sufficient evidence to conclude that Mr. Angoff's conclusions are "obvious[ly]" defective such that exclusion would be appropriate. *See SonicSolutions*, 722 F. Supp. 3d at 47 (quoting *Cortes-Irizarry*, 111 F.3d at 188) (disfavoring exclusion of an expert at summary judgment).

on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." (citations omitted)). Mr. Angoff's report is grounded in his experience regarding insurance companies' financial statements and regulatory requirements. The report and record together contain sufficient explanation of Mr. Angoff's methodological choices and reasoning to overcome a *Daubert* challenge in this posture. *See SonicSolutions*, 722 F. Supp. 3d at 47 ("Under First Circuit precedent, exclusion of an expert report at summary judgment is only warranted when the report's 'defects are obvious on the face of [the] proffer.'" (alteration in original) (quoting *Cortes-Irizarry*, 111 F.3d at 188); *see also id.* at 48 (denying motion to exclude expert where report contained sufficient explanation of methodology to permit a jury's conclusion without "resorting to the 'remote, speculative [or] hypothetical'" (alteration in original) (quoting *Cambridge Plating Co. v. Napco, Inc.*, 85 F.3d 752, 771 (1st Cir. 1996))).

### b. Legal Conclusions

Defendants also argue that Mr. Angoff's opinions that LMPIC's regulator would not permit it to pay a $45 million judgment and that LMPIC does not "act independently" of LMIC are conclusions without factual basis. Mem. at 12–14. Defendants further characterize this second conclusion as a legal opinion. *Id.* at 14. As to the assertion about what a regulator would permit, Plaintiffs contend that "this is not Mr. Angoff's primary opinion," but that "[t]his conclusion is reasonably based on Mr. Angoff's long career regulating and overseeing the insurance industry . . . and on the report of a state regulator," and is a mischaracterization of the opinion. Opp. at 17–18. As to the independence of LMPIC from LMIC, Plaintiffs argue that Defendants dispute the substance of the opinion merely to create a factual dispute that should be left to the jury. *Id.* at 18.

"The line between testimony regarding what the law requires and testimony describing how an industry practice typically operates is not always clear. The latter form of testimony is admissible." *Ji*, 538 F. Supp. 2d at 358 (citing *Levin v. Dalva Bros. Inc.*, 459 F.3d 68, 79 (1st Cir. 2006)). "Plainly put, 'an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied.'" *United States v. Shafa*, 768 F. Supp. 3d 242, 256 (D. Mass. 2025) (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997)).

The Court agrees that some statements in the report are inadmissible conclusions of law. Mr. Angoff may testify regarding what, in his experience, a regulator would consider in analyzing an insurance company's availability and source of funds to pay a judgment, but not the conclusion of law as to whether LMPIC's regulator would permit LMPIC to pay a $45 million judgment. Similarly, Mr. Agnoff may testify as to industry practice in structuring and operating insurance companies and the relationship created in the reinsurance context, but not the conclusion of law that LMPIC does not "act independently" of LMIC. *See Ji*, 538 F. Supp. 2d at 359–60 (striking only portions of expert's report expressing legal conclusions).

### c. Bias

Defendants also attack Mr. Angoff as an unreliable expert due to alleged bias. Mem. at 14–16. Specially, Defendants argue that, "until recently, [Mr. Angoff] was a plaintiff's class action lawyer who sued insurance companies for a living, and is not independent of Plaintiffs' counsel given his prior relationship with them." *Id.* at 14. Defendants further contend that Mr. Angoff's failure to "pressure test his ultimate conclusion against the standard used by insurance regulators to determine financial viability, the RBC percentage" as telling of his bias. *Id.* at 15. Plaintiffs

argue that any alleged bias "is fertile ground for cross-examination at trial," and not a basis to disqualify Mr. Angoff. Opp. at 16.

It is well-established that "[a]ssessing the potential bias of an expert witness, as distinguished from his or her specialized training or knowledge or the validity of the scientific underpinning for the expert's opinion, is a task that is 'properly left to the jury.'" *Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010) (quoting *United States v. Carbone*, 798 F.2d 21, 25 (1st Cir. 1986)); *see also Integrated Commc'ns & Techs., Inc. v. Hewlett-Packard Fin. Servs. Co.*, 478 F. Supp. 3d 126, 141 (D. Mass. 2020) ("[A]lleged bias is not a basis to exclude [him]. . . . At most, an expert's bias goes to the weight or credibility of his testimony." (citations omitted)). As such, Mr. Angoff's potential bias does not necessitate his exclusion.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to strike and exclude the opinions of Plaintiffs' expert (Dkt. 108) is DENIED, as constrained by the memorandum above to prohibit testimony on legal opinions.

**So Ordered.**

Dated: July 29, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court