# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| WATTS, et al., ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **23-12845-BEM** |
| ) | |
| **LIBERTY MUTUAL PERSONAL** ) | |
| **INSURANCE COMPANY ET AL, et al.,** ) | |
| ) | |
| **Defendant[s].** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
## <u>MOTION FOR SUMMARY JUDGMENT</u>

**MURPHY, J.**

Plaintiffs Diane Watts, Anthony Watts, and Adam Pizzitola (collectively, "Plaintiffs")

brought this suit against Defendants Liberty Mutual Personal Insurance Company ("LMPIC") and

Liberty Mutual Insurance Company ("LMIC") (collectively, "Defendants"), alleging that

Defendants prematurely terminated rental car benefits in breach of their insurance policies. Before

the Court now is LMIC's motion for summary judgment on claims against LMIC. For the reasons

set for below, LMIC's motion for summary judgment is GRANTED.

## I.    Background

### A.    Factual Background

#### 1.    Plaintiffs' Policies and Claims

Plaintiffs purchased car insurance policies through LMPIC.[1]  Dkt. 86 ("SMF") ¶¶ 28–29, 46–47.  Mr. and Ms. Watts' policy contained Illinois specific coverage forms, and Mr. Pizzitola's policy contained Missouri specific coverage forms.  *Id.* ¶¶ 31, 49.  The policies also contained a "Notice of Membership in Liberty Mutual Holding Company Inc.," which explained that the insured "is a member of Liberty Mutual Holding Company Inc. and is entitled to vote" and that any provisions in the policy relating to membership in LMIC or entitlement to dividends as a member of LMIC are "deleted and replaced."  *Id.* ¶¶ 33, 51; *see also* Dkt. 88-5 ("Watts Policy") at 75; Dkt. 88-10 ("Pizzitola Policy") at 61.  In relevant part to the coverage dispute, the policies all contained an Optional Transportation Expenses Coverage endorsement which provided that, in the event of an accident, LMPIC would pay the expense of a rental vehicle while repairs were performed on the damaged vehicle.  SMF ¶¶ 34, 52; *see also* Watts Policy at 70; Pizzitola Policy at 55.  If the vehicle was declared a total loss, then LMPIC would pay for a rental vehicle for the "period of time reasonably required" to replace the total loss vehicle, up to a maximum of 30 days, or $900.  SMF ¶¶ 34–35, 52–53; *see also* Watts Policy at 5; Pizzitola Policy at 5.

Each Plaintiff argues that after a car accident in which they received access to and payment for a rental vehicle, LMPIC and LMIC prematurely terminated the rental car coverage, despite the contractual obligation to first determine the amount of time a policyholder reasonably needs to replace their totaled vehicle.  SMF ¶¶ 36–39, 54–57; Dkt. 99 ("CSMF") ¶¶ 44, 62.  As part of the

---

[1] LMIC contends that LMPIC is the sole underwriter and insurer for the policies.  SMF ¶¶ 29, 47.  The parties dispute whether LMIC is also a party to the contracts (and thus whether the obligations of LMPIC also applied to LMIC).  Dkt. 99 ("CSMF") ¶¶ 29, 47.  The Court addresses this dispute *infra* Section IV(A).

coverage determination, CCC Intelligent Solutions Inc. ("CCC") estimated the actual cash value of the totaled cars.[2]  SMF ¶¶ 40, 58.  For each Plaintiff, the report issued by CCC states that (1) the value of the total loss vehicle was "based on information provided to CCC by Liberty Mutual Personal Insurance Company"; (2) the report was "[p]repared exclusively for use by Liberty Mutual Personal Insurance Company"; and (3) adjustments in the report were "determined by Liberty Mutual Personal Insurance Company."[3]  *Id.* ¶¶ 41, 59.

### 2.    **LMPIC and LMIC**

LMPIC is a wholly owned subsidiary of non-party Liberty Mutual Group Inc. ("LMGI").  *Id.* ¶ 8.  LMPIC is organized under the laws of the State of New Hampshire with its statutory home office located in Portsmouth, New Hampshire.  *Id.* ¶ 4.  LMIC is also a wholly owned subsidiary of LMGI.  *Id.* ¶ 5.  LMIC is organized under the laws of Massachusetts with its statutory home office located in Boston, Massachusetts.  *Id.* ¶ 3.  LMIC and LMPIC are separately licensed to conduct the business of insurance in Missouri and Illinois.  *Id.* ¶ 7.  LMIC and LMPIC share office space at 175 Berkley Street.  Dkt. 112 ("RCSMF") ¶¶ 78, 111.

LMIC and LMPIC entered into a Management Services Agreement (the "MSA") by which LMIC provides services to LMPIC.  *Id.* ¶ 21; Dkt. 87-3 ("MSA").  Pursuant to this agreement, LMIC assists LMPIC with its insurance business in exchange for monetary compensation.  *See generally* MSA.  Specifically, "[s]ubject to the direction and control of LMPIC's Board of Directors and responsible officers," LMIC agreed to provide to LMPIC: (1) risk underwriting, claims processing and adjustments, and other administrative services, *id.* § I.A; (2) human resources services, such as administering employee benefits, *id.* § I.C; (3) marketing and strategic

---

[2] The parties dispute whether LMPIC or LMIC undertook the action to utilize CCC.  CSMF ¶¶ 40, 58.

[3] Plaintiffs admit that the reports contain these quotes but dispute the accuracy of the statements.  CSMF ¶¶ 41, 59.

support, *id.* § I.D; (4) information technology infrastructure and support, *id.* § I.E; (5) printing and mailing services, *id.* § I.F; (6) real estate management, such as handling issues relating to leases, *id.* § I.G; (7) legal and compliance services, such as litigation support, *id.* § I.H; and (8) reinsurance services, *id.* § I.K.[4]  The MSA further provides that "[n]othing in this Agreement shall be construed to alter the fact that LMPIC's books, records and accounts are and remain property of LMPIC and subject to the control of LMPIC" and "[n]othing in this Agreement shall be construed to alter the fact that all funds and invested assets of LMPIC are the exclusive property of LMPIC, held for the benefit of LMPIC and are subject to the control of LMPIC."[5]  *Id.* § I.B.  Additionally, the MSA provides that "LMPIC shall reimburse [LMIC] for the reasonable cost of performing any of the services provided pursuant to this Agreement."[6]  *Id.* § I.I.  Finally, the MSA states that "LMPIC shall maintain oversight for functions provided to LMPIC and shall monitor services annually for quality assurance."[7]  *Id.* § V.A.

### B.    **Procedural Background**

Plaintiffs filed this case on November 21, 2023.  Plaintiffs filed an amended complaint on February 23, 2024, asserting claims for breach of contract (Count I); vexatious conduct with respect to the policies issued in Missouri (Count II); violations of Illinois Section 155 of the Illinois Insurance Code with respect to the policies issued in Illinois (Count III); and declaratory judgment

---

[4] Plaintiffs dispute that this "accurately describes the relationship between LMIC and LMPIC."  CSMF ¶ 24.

[5] Plaintiffs do not contest the accuracy of the quoted language, but dispute "that the quoted language reflects the reality of the relationship between LMIC and LMPIC."  CSMF ¶ 25.

[6] Plaintiffs do not contest the accuracy of the quoted language, but dispute "that the quoted language reflects the reality of the relationship between LMIC and LMPIC."  CSMF ¶ 26.

[7] Plaintiffs do not contest the accuracy of the quoted language, but dispute "that the quoted language reflects the reality of the relationship between LMIC and LMPIC."  CSMF ¶ 27.

(Count IV).[8]  LMIC has now moved for summary judgment.  As part of the summary judgment papers, on May 16, 2025, LMIC moved to strike and exclude the opinions of Plaintiffs' expert, Jay Agnoff, which had been filed in support of Plaintiffs' opposition to LMIC's summary judgment motion.  After an evidentiary *Daubert* hearing on July 21, 2025, the Court denied the motion to strike.  The Court heard oral arguments on the summary judgment motion on August 14, 2025, and took the matter under advisement.

## II.    <u>Standard of Review</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  Affidavits may be offered in opposition to summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence.  Fed. R. Civ. P. 56(e). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  However, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent

---

[8] Both the initial and amended complaints named Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company, Inc. as additional defendants, but those entities were dismissed without prejudice on May 4, 2024.  Dkt. 58.

evidence showing the existence of a genuine issue of material fact." *Perez v. Lorraine Enters.*, 769 F.3d 23, 29–30 (1st Cir. 2014).

### III.     <u>Choice of Law</u>

"A federal district court exercising its diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (quoting *Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 213 n.3 (1st Cir. 1991)). Here, that is Massachusetts. However, "[t]he first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions." *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 4 (1st Cir. 2004) (citing *Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir. 1997)). When the result is the same under the substantive law of any interested jurisdiction, the court "need not resolve the issue." *Lambert v. Kysar*, 983 F.2d 1110, 1114 (1st Cir. 1993). Relatedly, the court is "free to honor the reasonable understanding of the parties as to choice of law." *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012).

For the breach of contract claims and issues of contract interpretation, the parties agree that the laws of Missouri and Illinois should govern, because Plaintiffs' policies were issued in those states. *See* Mem. at 9 n.4; Opp. at 8–14 (applying Missouri and Illinois law). As the court is "free to honor the reasonable understanding of the parties as to choice of law," *Katz*, 672 F.3d at 72 (citing *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)), the Court does so here, and notes that it appears consistent with prior decisions from this district, *see Admiral Ins. Co. v. Tocci Bldg. Corp.*, 594 F. Supp. 3d 201, 207 (D. Mass. 2022) (noting the preference in Massachusetts is for "one state's law to govern multistate policies" and this "pragmatically leads to the domicile of the policyholder generally being the choice of law state because that is the only state which all the policies are certain to have in common"), *aff'd on other grounds*, 120 F.4th 933 (1st Cir. 2024); *see also Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 6 (1st Cir. 2004) (applying Maryland

law to insurance coverage dispute because Maryland was the state where the insured were domiciled, polices were delivered, premiums were paid, and benefits were distributed).

For the issue of alter ego liability, the parties apply both Massachusetts and New Hampshire law. The court concludes the result would be the same under either states' law. "Accordingly, the court will not 'make a formal choice of law.'"  *AIG Prop. Cas. Co. v. Green*, 217 F. Supp. 3d 415, 425 (D. Mass. 2016) (quoting *Royal Bus. Grp., Inc. v. Realist, Inc.*, 933 F.2d 1056, 1064 (1st Cir. 1991)).

## IV.   <u>Discussion</u>

LMIC argues that all four claims against it must fail because "LMPIC is the sole underwriter of Plaintiffs' insurance policies, and therefore, LMIC has no obligations, contractual or otherwise, to Plaintiffs as a joint or co-insurer." Dkt. 85 ("Mem.") at 9. Under both Illinois and Missouri law, a breach of contract claim requires privity of contract. *Kaplan v. Shure Bros., Inc.,* 266 F.3d 598, 602 (7th Cir. 2001); *Verni v. Cleveland Chiropractic College,* 212 S.W.3d 150, 153 (Mo. 2007) (en banc). In the insurance context, such privity "exists between the insurer and insured party." *Roberts v. Standard Ins. Co.*, 2004 WL 2367741, at *6 (N.D. Ill. Oct. 15, 2004); *see also Benoist v. GEICO Cas. Co.*, 2022 WL 10422718, at *2 (E.D. Mo. Oct. 18, 2022). Plaintiffs do not dispute that their claims against LMIC must be dismissed if LMIC is not a party to their insurance policies, instead arguing that there are material issues of fact sufficient to survive summary judgment. *See generally* Dkt. 97 ("Opp.") (arguing that claims for breach of contract, insurance bad faith, and declaratory judgment cannot be dismissed because questions of fact remain as to whether LMIC "provided insurance" to Plaintiffs either as a party to the contracts or through alter ego liability).

A.    __Whether LMIC Is a Party to the Insurance Contracts__

"In construing the terms of an insurance policy, [the court] applies 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance,' and resolves ambiguities in favor of the insured." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. 2009) (en banc) (quoting *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)); *see also Saathoff v. Country Mut. Ins. Co.*, 379 Ill. App. 3d 398, 402 (2008) ("Where the terms of a policy are clear and unambiguous, their plain meaning will be given effect. Where, however, a provision in an insurance policy is subject to more than one reasonable interpretation, it is ambiguous and must be construed against the insurer and in favor of the insured." (citations omitted)). "Provisions should be read in context, however, not in isolation." *Hall v. Burger*, 277 Ill. App. 3d 757, 761 (1996); *see also Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. 2009) (en banc) ("It is settled law that 'when analyzing an insurance contract, the entire policy and not just isolated provisions or clauses must be considered.'") (citation omitted)).

As an initial matter, the Court finds that the policies are not ambiguous. The policies define the terms "'we', 'us' and 'our'" to "refer to the Company providing this insurance." Watts Policy at 37; Pizzitola Policy at 21. While "the Company" is not specifically defined, the policies' declaration pages only identify LMPIC as the insurer. *See* Pizzitola Policy at 6 ("LibertyGuard Auto Policy Declaration provided and underwritten by Liberty Mutual Personal Insurance Company (a stock insurance company), Boston, MA.");[9] Watts Policy at 34 (same); *see also*

---

[9] Plaintiffs contend that this statement is "inaccurate." Opp. at 12. But that is not enough to create an ambiguity in the contract. *See Saathoff*, 379 Ill. App. 3d at 402 ("Where the terms of a policy are clear and unambiguous, their plain meaning will be given effect."); *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. 2012) ("If a contract is unambiguous, the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used." (internal quotation marks and citation omitted)). This argument more appropriately is discussed with regard to alter ego liability, discussed *infra* Section III(B). Nor does Plaintiffs' contention that the MSA assigns underwriting responsibility to LMIC contradict this. *See* CSMF ¶ 24(a). That LMIC provided underwriting services on behalf of LMPIC does not mean that LMIC was the insurer, rather than LMPIC.

Dkt. 88-1 ("Watts Dep. Tr.") at 93:14–24 (testimony of Ms. Watts that LMPIC was the underwriter and issuer of the Watts Policy and that she did not know why LMIC was named as a defendant in this action).  In fact, the only reference to LMIC in the policies is in a "Notice of Membership in Liberty Mutual Holding Company Inc.," which states that the insured "is a member of Liberty Mutual Holding Company Inc. and is entitled to vote" and states that any provisions in the policy relating to membership in LMIC or entitlement to dividends as a member of LMIC are "deleted and replaced."  Watts Policy at 75; Pizzitola Policy at 61.  Other courts have held similar policy language as insufficient to create ambiguity as to which corporate entity provided the insurance. *See, e.g.*, *Knox v. Am. Fam. Ins. Co.*, 2025 WL 1137222, at *4 (W.D. Wis. Apr. 10, 2025); *Saathoff*, 886 N.E.2d at 375.  While Plaintiffs seek to distinguish these prior cases by noting that "[t]he insurance policies in all three cases either defined 'we, us, and our' to specifically mean the company in the declaration sheet or specifically defined 'Company,'" Opp. at 12, this argument is unavailing.  That the policies use the phrase "Company providing this insurance," Watts Policy at 37; Pizzitola Policy at 21—rather than referencing the declarations—does not create any ambiguity here, where the declarations explicitly mirror the definition's language by stating that Liberty Mutual Personal Insurance Company "provide[s]" the insurance, *see, e.g.*, Watts Policy at 34; Pizzitola Policy at 6.[10]

In light of the clear, unambiguous language stating that LMPIC provides the insurance, the Court need not consider extrinsic evidence.  *See Saathoff*, 379 Ill. App. 3d at 402 ("Where the

---

[10] That the Pizzitola Policy includes a placeholder "<< COMPANY.NAME >>"—in other words, the fact that LMPIC left the company name undefined on a single page of the policy, Pizzitola Policy at 19, does not create an ambiguity.  Based on the other pages of the policy and lack of reference to LMIC, it is not reasonable to read the placeholder as referring to LMIC, rather than LMPIC as clearly intended.  *See, e.g.*, Pizzitola Policy at 6 (stating "LibertyGuard Auto Policy Declaration provided and underwritten by Liberty Mutual Personal Insurance Company").  That the address following the placeholder is the office of LMIC does not alter this conclusion, given that LMPIC uses the same address as its principal place of business.  RCSMF ¶¶ 78, 111.

terms of a policy are clear and unambiguous, their plain meaning will be given effect."); *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. 2012) ("If a contract is unambiguous, the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used." (internal quotation marks and citation omitted)).

Even if the Court found the policy language ambiguous, however, Plaintiffs' arguments still fail. Plaintiffs point to various pieces of evidence related to the policies which they contend demonstrate at least a question of fact as to whether LMIC is an insurer to the policies at issue, namely the presence of corporate signatures and "LMIC's website and phone numbers" on the policies. Opp. at 10–11. The Court does not find that these elements of the policies plausibly suggest that LMIC, rather than or in addition to LMPIC, is the insurer for the policies. These additional elements, while attributable to either company in a vacuum, cannot be read to suggest that LMIC is involved in the policies where LMIC is otherwise not mentioned and LMPIC is clearly stated as the underwriter. "Other courts have rejected similar arguments, finding that the use of general branding and corporate signatures on an insurance policy does not suggest that the actual insurer is another entity." *Knox*, 2025 WL 1137222, at *4 (collecting cases); *see also id.* ("Despite the presence of corporate signatures and the broader branding of documents with 'American Family Insurance' or the abbreviation 'amfam.com,' the applicable policy Declarations unambiguously list American Family Insurance Company as the insurance provider. Conversely, the Declarations do not even mention AFMICSI or AFIMHC as an insurer, and there is nothing to otherwise suggest that either of those defendants are a party to plaintiffs['] insurance policy." (citation omitted)); *Rumick v. Liberty Mut. Ins. Co.*, 2018 WL 3740645, at *3 (N.D. Ill. Aug. 6, 2018) ("[D]espite the broader branding of documents with Liberty Mutual's name and the administration of payments by the Liberty Mutual umbrella of companies, the Policy clearly

indicates that [plaintiff] contracted with [Liberty Insurance Corporation], not any other Liberty Mutual entity.").[11]    None of the evidence identified by Plaintiffs necessitates a different conclusion.

Likewise, that the policies list 175 Berkley Street as the business address does not somehow write LMIC into the policies.  Though 175 Berkley Street is LMIC's statutory office and principal place of business, LMPIC also uses 175 Berkley Street for an office.  RCSMF ¶¶ 78, 111.  The fact that LMIC shares an office with LMPIC does not transform LMIC into Plaintiffs' insurance carrier or make the two companies co-insurers.

Plaintiffs also argue that the fact that LMIC collected the premiums and paid claims instead of LMPIC shows that a disputed question of fact remains concerning whether LMIC is a proper defendant.  Opp. at 10–11.  But the fact that LMIC undertook these actions pursuant to its contractual obligations under the MSA does not make LMIC an appropriate defendant.  Neither Illinois nor Missouri permits insureds to pursue breach of contract claims against adjusters or reinsurers.  *See Shobe v. Kelly*, 279 S.W.3d 203, 209 (Mo. Ct. App. 2009) (holding that adjusters are not personally liable for breach of contract or insurance bad faith); *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 643 (7th Cir. 2015) ("An adjuster who is retained by an insurance company is subject to a duty which runs to the company and not to the insured in adjustment of a claim, and, where not a party to the contract of insurance, he or she is not subject to an implied duty of good faith and fair dealing to the insured." (internal quotation marks and citation omitted)); *J.C. Penney Life Ins. Co. v. Transit Cas. Co. in Receivership*, 299 S.W.3d 668, 673–74 (Mo. Ct.

---

[11] Plaintiffs argue that *Rumick* is distinguishable because it decided the case at the motion to dismiss stage, without the benefit of discovery.  Opp. at 25.  However, all of the *Rumick* plaintiff's allegations were presumed true for the purposes of the motion.  *See Rumick*, 2018 WL 3740645, at *1 n.1 (assuming the truth of plaintiff's factual allegations for purposes of the motion to dismiss).

App. 2009) (holding that a reinsurer is liable only to reinsured and has no contractual obligation or liability to underlying insured); *In re Liquidations of Rsrv. Ins. Co.*, 122 Ill. 2d 555, 561 (1988) ("[A] reinsurance agreement is distinct from and unconnected with the original insurance policy; the original policyholder—the entity whose loss is insured—is not a party to the reinsurance agreement."). Plaintiffs concede that LMIC is LMPIC's reinsurer. CSMF ¶ 13 (describing LMIC as "the inhouse reinsurer"); *see also* July 21 Rough Hr'g Tr. at 53:20–54:18 (Plaintiffs' expert's testimony that only LMPIC, not LMIC, was a party to the insurance contracts because LMPIC wrote the contract and LMIC was merely the reinsurer).

Accordingly, the record establishes that LMIC is not a party to the insurance policies.

### B.  <u>Whether LMIC and LMPIC Are Alter Egos</u>

Even if LMIC is not a party to the contract, Plaintiffs argue that it may be held liable under an alter ego theory. At trial, Plaintiffs bear the burden of proof when seeking to pierce the corporate veil. *See Antaeus Enterprises, Inc. v. Davidson*, 774 F. Supp. 2d 409, 415 (D.N.H. 2011). LMIC contends that evidence demonstrates that LMIC and LMPIC are distinct entities whose forms do not promote fraud or injustice, and thus that the record cannot establish alter ego liability. Mem. at 16–20.

1.    **New Hampshire Law**[12]

Court must "tread carefully when determining whether it is appropriate to put aside the basic tenet of corporate law that 'corporations—notwithstanding relationships between or among them—ordinarily are regarded as separate and distinct entities,' and thereby to 'allow a plaintiff to pierce the corporate veil.'" *Zimmerman v. Puccio*, 613 F.3d 60, 73–74 (1st Cir. 2010) (citations omitted). "[T]he New Hampshire Supreme Court recognizes that 'one of the desirable and legitimate attributes of the corporate form of doing business is the limitation of the liability of the owners to the extent of their investment.'" *Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 186 (D.N.H. 2011) (quoting *LaMontagne Bldrs., Inc. v. Bowman Brook Purchase Grp.*, 150 N.H. 270, 274 (2003)); *see also United States v. Bestfoods,* 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.").

As such, "[t]he legal distinction between parent and subsidiary may be disregarded only where the parent corporation controls the subsidiary, and has relied on the formal separateness of the subsidiary in order to promote some fraud or injustice." *Bennett v. GAF Corp.*, 1994 WL 279752, at *2 (D.N.H. June 2, 1994). The alter ego doctrine allows "plaintiffs to pierce the

---

[12] Defendants characterize LMPIC and LMIC as sister companies that share a common parent company—LMGI. SMF ¶¶ 4–5; *see also* Dkt. 17 at 1 (corporate disclosure statement for LMPIC noting that "[LMGI] owns 100% of the stock of Liberty Mutual Personal Insurance Company"); Dkt. 50 at 1 (corporate disclosure statement for LMIC noting that "[LMGI] owns 100% of the stock of Liberty Mutual Insurance Company"). The New Hampshire Supreme Court has held that "the fact that one person controls two corporations is not sufficient to make the two corporations and the controlling stockholder the same person under the law." *Vill. Press, Inc. v. Stephen Edward Co.*, 120 N.H. 469, 471 (1980) (citing *Waff Bros., Inc. v. Bank of N. C., N. A.*, 289 N.C. 198, 210–11 (1976)). And, critically, "in New Hampshire, corporate veil piercing and the alter-ego doctrine have been used to do one thing only: hold the owners of corporations liable for the debts of the corporations they own." *Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 186 (D.N.H. 2011). While Plaintiffs contend that LMIC has a "controlling interest" functionally or operationally in LMPIC, Opp. at 18, that does not demonstrate a genuine dispute as to the fact that LMIC has no actual *ownership* interest in LMPIC. The Court has found no authority "for the proposition that New Hampshire would, if presented with the question, adopt a single-enterprise theory . . ., under which an entity other than an owner of a corporation could be held liable for that corporation's conduct by means of veil piercing." *Id.* As such, LMIC could not be held liable as an alter ego of LMPIC under New Hampshire law. However, since neither party raised this issue, the Court addresses the issue of alter ego liability under the standard New Hampshire factors.

corporate veil to place the liability of the corporation at the feet of one or more of its principals."
*Terren v. Butler*, 134 N.H. 635, 639 (1991). The non-dispositive "[f]actors relevant to determining whether the parent's control over the subsidiary warrants 'piercing the corporate veil'" in New Hampshire include:

> (1) failure to observe corporate formalities;
>
> (2) intermingling of the corporations' properties, accounts, and records;
>
> (3) inadequate capitalization of the subsidiary;
>
> (4) common officers and directors;
>
> (5) representing to the public that the corporations are a single entity;
>
> (6) common office space, address, and telephone numbers;
>
> (7) failure of corporations to deal with each other at arms length;
>
> (8) payment of the subsidiary's debts, salaries, and other expenses by the parent corporation; and
>
> (9) domination of the subsidiary's daily operations and policies by the parent corporation.

*Bennett*, 1994 WL 279752, at *2.

Even where other factors supporting veil piercing are present, New Hampshire treats the requirement of preventing an injustice or fraud as a necessity. *See, e.g.*, *Druding v. Allen*, 122 N.H. 823, 827–28 (1982) (reversing a lower court's piercing of the veil, even though a closely held corporation had failed to observe certain formalities, "[i]n view of the dearth of evidence that [the corporation's president] used the corporation to promote injustice or fraud").

a.    **Control**[13]

LMIC argues that there is no material dispute of fact that LMIC and LMPIC are "legally separate" companies that respect the corporate form. Mem. at 16–17. Plaintiffs contend that "the intermingling of LMIC and LMPIC's business activity is pervasive" to at least raise a genuine dispute of material fact. Opp. at 17. Specifically, Plaintiffs point to a reinsurance agreement and the MSA between the two companies, which delineate which corporation takes which actions, to argue that LMIC dominates LMPIC. *Id.* at 17–22. Yet the existence of these two formal agreements cuts against Plaintiffs' arguments.

Under the reinsurance agreement, LMIC receives premiums from LMPIC in exchange for assuming the risk of the underlying policies.[14] Critically, reinsurance is a legal arrangement through a contract:

> whereby one insurer transfers or "cedes" to another insurer all or part of the risk it has assumed under a separate or distinct policy or group of policies in exchange for a portion of the premium. In essence, reinsurance is insurance for insurance companies. Reinsurance provides insurers with the ability to spread the risk that they have assumed, thereby preventing any one insurer from suffering a catastrophic loss.

1A COUCH ON INSURANCE, § 9:1; *see also N. Riv. Ins. Co. v. Ace Am. Reins. Co.*, 361 F.3d 134, 137 (2d Cir. 2004) (explaining how reinsurance spreads risk of loss and works by an insurer paying premiums to its reinsurer in return for the reinsurer's agreement to assume the risk under direct insurance policies issued by the insurer); July 21 Rough Hr'g Tr. at 38:13–39:6 (Plaintiffs'

---

[13] The Court uses "control" to refer to *Bennett* factors 1–2, 4, and 7–9 (failure to observe corporate formalities; intermingling of the corporations' properties, accounts, and records; common officers and directors; failure of corporations to deal with each other at arms length; payment of the subsidiary's debts, salaries, and other expenses by the parent corporation; and domination of the subsidiary's daily operations and policies by the parent corporation).

[14] Plaintiffs also make arguments related to LMPIC's ceding of its business to LMIC and the resulting inability of LMPIC to satisfy a judgment. Opp. at 17. The Court addresses these arguments *infra* Section III(B)(1)(b) (discussing the sufficiency of LMPIC's capitalization).

expert's testimony that reinsurance between two related companies is lawful and explaining the purpose of reinsurance is to spread risk and permit the insurer to write more business).  A carefully structured reinsurance agreement does not amount to the type of corporate domination required to pierce the corporate veil.

Nor does the MSA demonstrate dominating levels of control.  While Plaintiffs characterize the MSA as permitting LMIC to operate under its "sole discretion," Opp. at 20–21, that reading is undermined by the text of the agreement.  The terms of the MSA clearly provide that LMPIC retains the ultimate control over how LMIC fulfills its obligations for LMPIC under the MSA.  Plaintiffs cannot raise a genuine dispute merely by calling it "incorrect."  *See, e.g.*, *Conservation L. Found., Inc. v. N.H. Fish & Game Dep't,* 2020 WL 5102830, at *13 (D.N.H. Aug. 27, 2020) (explaining that skepticism, "without more, [is] insufficient to generate a genuine dispute of material facts").  Under the terms of the MSA: (1) LMPIC continues to own and control its own books, records, and accounts and LMPIC has exclusive ownership over all funds and assets it collects and invests, MSA § I(B)(3); (2) LMIC's services are "[s]ubject to the direction and control of LMPIC's Board of Directors and responsible officers," *see, e.g.*, *id.* § I(A); (3) with respect to claims made under LMPIC's policies and all services under the MSA, LMIC must perform services for "LMPIC as LMPIC determines to be reasonably necessary or desirable," *id.* § I; (4) as to risk underwriting, claims processing, policyholder services, and contract management and administration, among other things, the LMIC must perform these services "at a level that is at least equal to its standard for performing such functions on behalf of its own insurance operations," *id.* § V.A; and (5) "LMPIC shall maintain oversight for functions provided to LMPIC and shall monitor services annually for quality assurance," *id.*  Given the clear retention of control and oversight by LMPIC, the terms of the MSA fail to provide LMIC with such pervasive control over

LMPIC to justify veil-piercing.  Plaintiffs point to no evidence in the record that the two companies do not abide by these terms of the MSA.[15]  *See Perez*, 769 F.3d at 29–30 ("As to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact.").

Finally, Plaintiffs contend that the overlap between officers and directors of the two companies supports the conclusion that LMIC maintains pervasive control of LMPIC, arguing that "[b]ecause LMIC entirely controls and operates LMPIC, LMPIC officers and directors do not function, *i.e.*, do not operate or control LMPIC."  Opp. at 18.  Yet Plaintiffs do not contend that there is any issue with the MSA, other than that it leads to a result that they find unjust (that LMPIC is left without sufficient funds to satisfy a judgment).  There is no evidence that LMIC has directed LMPIC to operate in a manner that is to LMPIC's detriment, let alone evidence to support Plaintiffs' claim that "LMPIC officers and directors do not function."[16]  *See Bennett*, 1994 WL 279752, at *3 ("While common officers and directors is one factor tending to indicate that the parent corporation dominates its subsidiary, this factor alone is insufficient to justify disregarding the parent/subsidiary distinction.  Plaintiffs have not demonstrated that by means of these common officers and directors, [parent company] actually exerts control over the Subsidiary's finances,

---

[15] The propriety of the arrangement under the MSA is bolstered by the fact that the MSA has been approved by the Massachusetts Department of Insurance ("DOI").  The Court is not aware of any current issue with the MSA raised by any regulator other than according to Plaintiffs' speculation.  *See* CSMF ¶ 22 (disputing that the MSA is an "arms-length agreement" but identifying no evidence to dispute that the Massachusetts DOI approved the MSA); Dkt 87 ¶ 25 ("The Massachusetts [DOI] reviewed the MSA and informed LMPIC and LMIC on March 25, 2019 that it had no objections to the latest changes to the agreement"); Dkt. 98-8 at 21–22 (2018 LMPIC report from Massachusetts DOI in which no issue is raised with the MSA); Dkt. 98-14 at 33 (same with regards to 2018 LMIC report); *see also Conservation L. Found.*, 2020 WL 5102830, at *13 (explaining that skepticism, "without more, [is] insufficient to generate a genuine dispute of material facts").

[16] Tellingly, Plaintiffs cite no evidence in support of this argument.  *See* Opp. at 18.

policies, and practices beyond that which a majority shareholder might ordinarily exert over a corporation in which it owns stock.").

## b. Capitalization[17]

LMIC has demonstrated that LMPIC is adequately capitalized, as demonstrated by the fact that LMPIC's regulator has taken no issue with its finances, and that Plaintiffs arguments to the contrary merely seek to circumvent the prohibition against suing a reinsurer. *See* Mem. at 16–17, 19–20. Plaintiffs fail to back up their claim that "LMIC strips LMPIC of practically everything" such that LMPIC could not satisfy a judgment. Opp. at 22.

Plaintiffs' argument that the reinsurance arrangement between the two companies is merely a method by which LMIC strips LMPIC of assets misstates the record and reality. "[F]inancial misconduct . . . involving such manipulation as asset-stripping or asset-siphoning, which depletes the resources" of the corporation can justify veil-piercing. *Birbara v. Locke*, 99 F.3d 1233, 1241 (1st Cir. 1996) (applying Massachusetts law). However, as Plaintiff's own expert explained, reinsurance is merely a means by which an insurance company "transfers the risk of that business to the re-insurer and therefore it can write more business than it could otherwise write." July 21 Rough Hr'g Tr. at 39:4–6. There is no dispute that LMIC acts as LMPIC's reinsurer. CSMF ¶ 13 (describing LMIC as "the inhouse reinsurer"); *see also* July 21 Rough Hr'g Tr. at 53:20–54:18 (Plaintiffs' expert's testimony that only LMPIC, not LMIC, was a party to the insurance contracts because LMPIC wrote the contract and LMIC was merely the reinsurer). Plaintiffs make no attempt to argue that reinsurance constitutes *per se* financial misconduct,[18] or point to any

---

[17] The Court uses "capitalization" to refer to *Bennett* factor 3 (inadequate capitalization of the subsidiary).

[18] Nor could Plaintiffs plausibly make this argument, especially where their own expert has testified to the legality of reinsurance arrangements between affiliated companies. *See* July 21 Rough Hr'g Tr. at 38:13–18.

competent evidence that the arrangement here involves misconduct. *See* Opp. at 21–23. LMIC's receiving premiums in exchange for taking on risk does not amount to asset stripping.

Even assuming that LMPIC would not be able to satisfy any judgment, *see* Opp. at 22, that fact, on its own, fails to justify veil-piercing. *See Delta MB LLC v. 271 S. Broadway, LLC*, 2024 WL 3826113, at *5 (D.N.H. Aug. 15, 2024) ("[A] person's mere control of a corporate entity plus that entity's apparent insolvency is not enough, on its own, to pierce the corporate veil. Otherwise, every penniless closely-held corporation would be subject to routine veil piercing, and an exception that broad would undermine the presumption of corporate separateness." (citations omitted)). The record is devoid of any evidence that Defendants entered into the reinsurance arrangement to deplete LMPIC's assets to avoid paying debts. *Cf Terren*, 134 N.H. at 640 (substantial depletion of corporate assets after learning about potential claim); *Bartholomew*, 1995 WL 907897, at *11 (stating that "[c]ommingling personal and corporate assets is not as egregious an abuse of the corporate form as transferring money from corporate to personal assets (or vice-versa) to avoid existing liabilities"). Instead, by Plaintiffs' own argument, LMIC has been paying LMPIC's claims via the reinsurance agreement, Opp. at 17, rather than using the (alleged) lack of capitalization to avoid LMPIC paying debts. This contradicts Plaintiff's theory of asset-stripping.

### c.    <u>Remaining Factors[19]</u>

Of the remaining factors, one weighs in favor of veil-piercing, and one against. As to factor 5, Plaintiffs contend that "LMIC and LMPIC represent to the public they are a single entity," at least in part through the use of a shared logo. Opp. at 26. This argument fails. A shared logo

---

[19] The Court uses "remaining factors" to refer to *Bennett* factors 5–6 (representing to the public that the corporations are a single entity and common office space, address, and telephone numbers).

is insufficient to demonstrate that two companies represent themselves as the same entity. *See Knox*, 2025 WL 1137222, at *4 (finding that the use of a shared logo "on an insurance policy does not suggest that the actual insurer is another entity"); *see also Pac. Sw. Structures, Inc. v. Mt. Hawley Ins. Co.*, 2011 WL 13356246, at *3 (S.D. Cal. Oct. 28, 2011) ("[R]elated companies' use of one another's logo is not sufficient to show a unity of interest."). Further, Plaintiffs acknowledge that the use of the term "Liberty Mutual" is merely a marketing name, and not something to be relied upon to determine the issuer of their policies. *See* CSMF ¶ 34 n.5 (admitting that the term "Liberty Mutual" is merely a wordmark used on various insurance products); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("[S]eparate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos.").[20] More importantly, the record demonstrates that LMIC and LMPIC take steps to distinguish themselves. They are separately licensed carriers that issue separate policies. SMF ¶¶ 7–8; *see also supra* Section IV(A) (holding that LMIC is not a party to LMPIC's policies). The claims correspondence and the CCC valuation reports identified LMPIC as Plaintiffs' carrier. *See, e.g.*, SMF ¶¶ 41, 59. The policies themselves make no mention of LMIC, aside from a page titled "Notice of Membership in Liberty Mutual Holding Company Inc.," which states that the insured "is a member of Liberty Mutual Holding Company Inc. and is entitled to vote" and states that any provisions in the policy relating to membership in LMIC or entitlement to dividends as a member of LMIC are "deleted and replaced." Watts Policy at 75; Pizzitola Policy at 61. Ms. Watts herself testified that LMPIC was the underwriter and issuer of the Watts Policy

---

[20] Courts throughout the country "have found that 'common marketing image and joint use of trademark logs fail to render [entities as] alter ego[s].'" *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *9 (D.N.J. Apr. 25, 2018) (alterations in original) (quoting *In re Enter. Rent–A–Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012)), *opinion clarified on denial of reconsideration*, 2019 WL 77306 (D.N.J. Jan. 2, 2019).

and that she did not know why LMIC was named as a defendant in this action. Watts Dep. Tr. at 93:14–24. There is no basis upon which the Court can reasonably conclude that LMIC and LMPIC represent themselves as a single entity. Thus, factor 5 weighs against veil-piercing.

As to factor 6, LMIC and LMPIC do share common office space, address, and telephone numbers. CSMF ¶ 111; RSMF ¶ 111. However, they have different statutory home offices (Massachusetts and New Hampshire). RSMF ¶ 111. Given these undisputed facts, factor 6 moderately weighs in favor of piercing the corporate veil.

### d.    Injustice or Fraud

Even where the balance of factors weighs in favor of piercing the corporate veil, in order to do so, New Hampshire requires that the use of the corporate form be shown to "promote injustice or fraud." *Druding*, 122 N.H. at 827–28 (reversing a lower court's piercing of the veil, even though a closely held corporation had failed to observe certain formalities, "[i]n view of the dearth of evidence that [the corporation's president] used the corporation to promote injustice or fraud"); *see also Martinez v. Petrenko*, 792 F.3d 173, 183 (1st Cir. 2015) (noting "distinction between use of the corporate form to protect the owner from liability for an injustice perpetrated by the corporation, and an owner's use of the corporate form to promote or perpetrate the injustice" and concluding that, for the first situation, "New Hampshire case law rejects the notion of such a flimsy veil"). This dooms Plaintiffs' case against LMIC. Despite Plaintiffs' contentions, the record does not contain evidence to demonstrate a question of fact as to whether LMIC used LMPIC's corporate form to promote injustice or fraud.

Plaintiffs have not argued that either the reinsurance agreement or the MSA are unlawful. *See generally* Opp.; *see also* July 21 Rough Hr'g Tr. at 78:11 (Plaintiffs' expert's testimony that he did not believe the MSA was illegal). Instead, Plaintiffs suggest that the effects of these agreements—that LMIC [is] taking money from LMPIC, which LMPIC could use to pay a

judgment (it otherwise would not be able to satisfy)"—creates injustice.[21]    Opp. at 23.    As discussed above, the inability to satisfy a judgment alone, without evidence that the lack of funds was created to avoid payment is insufficient to pierce the corporate veil.[22]    *See supra* Section III(B)(1)(b).

Nor do Plaintiffs seriously contend that LMPIC's inability to satisfy a judgment would result in any harm to Plaintiffs.    Any issues presented by LMPIC's alleged inability to satisfy a judgment are mitigated by the reinsurance agreement, under which LMIC must cover the claims for LMPIC.    Dkt. 113 ¶ 7 (noting that LMIC has an "obligation" to reimburse LMPIC for claims under the reinsurance agreement); *see also* July 21 Rough Hr'g Tr. at 52:19–53:1 (Plaintiffs' expert's testimony agreeing that "in the case of a re-insurance arrangement, the re-insurer must pay all the losses that [it has] agreed to pay," which, in the case of an agreement for "a hundred percent of the losses," means the re-insurer must "pay a hundred percent of the losses as part of the re-insurance arrangement").    There is no genuine dispute that should LMPIC owe a judgment to Plaintiffs, LMIC would be obligated under the reinsurance agreement to cover those losses and that LMIC has sufficient funds to do so.[23]

Moreover, courts in other jurisdictions have rejected similar alter ego claims.    *See, e.g.*, *Knox*, 2025 WL 1137222, at *5–6 (accepting as true allegations that subsidiary "cedes all of its business" to parent company, which assumes all losses and expenses and files a consolidated

---

[21] Given the hotly disputed nature of this issue, the Court assumes for purposes of this motion that LMPIC does not have sufficient assets to satisfy a potential judgment in this case.

[22] Further, as discussed above, characterizing the arrangement as "taking money from LMPIC" mischaracterizes the record, as LMIC accepts premiums in exchange for taking on the risk of the policies. *See, e.g.*, RSMF ¶ 90 ("It is admitted that LMPIC cedes premiums to LMIC as LMPIC's reinsurer."); July 21 Rough Hr'g Tr. at 38:19–39:6 (Plaintiffs' expert's testimony that reinsurance spreads risk and permits the insurer to write more business).

[23] Again, the fact that LMIC has agreed to cover such losses under the reinsurance agreement does not make it an appropriate party to the present suit. *See supra* Section IV(B)(1)(b).

federal tax return on behalf of subsidiary, but finding that such an arrangement was not evidence of "corporate control being used to perpetrate fraud or any other wrongdoing," and rejecting the plaintiffs' alter ego arguments). Another court rejected nearly the same arguments on alter ego liability for LMIC with regards to a separate subsidiary, Liberty Insurance Corporation ("LIC"). *Rumick*, 2018 WL 3740645, at *4. In *Rumick*, the court accepted as true allegations that (1) "LMIC controls a majority of the Board of Directors of LIC [Liberty Insurance Corporation], who at all relevant times operated under the direction and control of LMIC and LMHC"; (2) "[a]ll three entities allegedly share common corporate administrative headquarters, with LMIC providing office space, computers, office equipment, and personnel to LIC"; (3) "LMIC has numerous management and servicing agreements in place with LIC, which relate to claims handling, credit and collections, and sales and underwriting, among other things"; (4) "[a]ll subsidiaries of LMIC and LMHC belong to an inter-company reinsurance pooling arrangement, of which LMIC is the lead insurer"; and (5) "LMIC and its subsidiaries, including LIC, file consolidated federal income returns and financial disclosures under the unified 'Liberty Mutual Insurance Group' umbrella." *Id.* Despite accepting these all as true, the Court explained that while these allegations could "suggest a unity of interest," they had not "suggested in any way why adherence to the fiction of a separate corporate existence would promote injustice or inequity." *Id.* Plaintiff's allegations fair no better here. Because Plaintiffs fail to show that the use of the corporate form here would promote injustice or fraud, veil-piercing is not appropriate.

### 2. **Massachusetts Law**

"Under Massachusetts law, disregarding separate corporate entities is the exception, not the rule." *Hiller Cranberry Products, Inc. v. Koplovsky Foods, Inc.,* 165 F.3d 1, 10 (1st Cir. 1999). Stated otherwise, in Massachusetts, corporate veils are pierced only "in rare situations." *Birbara v. Locke,* 99 F.3d 1233, 1238 (1st Cir.1996) (collecting Massachusetts cases); *accord Evans v.*

*Multicon Construction Corporation*, 30 Mass. App. Ct. 728, 732 (1991) (explaining that veil-piercing is permissible "in 'rare particular situations to prevent gross inequity'" (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 620 (1968)).  Massachusetts and New Hampshire courts apply similar factors when assessing whether to pierce the corporate veil. *Compare Attorney General v. M.C.K., Inc.*, 432 Mass. 546, 555 n.19 (2000) (identifying twelve factors for veil-piercing analysis in Massachusetts, which generally consider control, capitalization, and whether the use of the corporate form promotes fraud[24]), *with Bennett*, 1994 WL 279752, at *2 (identifying nine factors for veil-piercing analysis in New Hampshire that address the same considerations).  However, "Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations."  *Birbara*, 99 F.3d at 1238 (quoting *My Bread*, 353 Mass. at 620).  Given that Massachusetts courts apply similar factors as New Hampshire courts but are generally stricter in conducting the veil-piercing analysis, and having concluded that LMIC is not liable as an alter ego under New Hampshire law, the Court concludes that it would not be liable under Massachusetts law as well.

## C.    Additional Discovery Under Rule 56(d)

Plaintiffs contend that instead of granting summary judgment, the Court should permit additional discovery under Rule 56(d).  Rule 56(d) seeks "to 'protect[ ] a litigant who justifiably needs additional time to respond in an effective manner to a summary judgment motion.'"

---

[24] Massachusetts courts apply the following factors:

(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*M.C.K.*, 432 Mass. at 555 n.19.

*Emigrant Residential LLC v. Pinti*, 37 F.4th 717, 724 (1st Cir. 2022) (alteration in original) (quoting *Rivera-Almodóvar v. Instituto Socioenconómico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013)).[25]  To accomplish this, Rule 56(d) provides:

> if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  This showing encompasses five elements: "authoritativeness, timeliness, good cause, utility, and materiality."  *Resol. Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994).  The First Circuit has explained that, when seeking additional discovery, a party must provide:

> a timely statement — if not by affidavit, then in some other authoritative manner — that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those facts would influence the outcome of the pending summary judgment motion.

*Vélez v. Awning Windows, Inc.*, 375 F.3d 35, 40 (1st Cir. 2004).

Plaintiffs contend that they need "copies of [LMPIC's] bonds, the nationwide LMPIC data, bylaws, the interaction with the Massachusetts Insurance Commissioner referenced in para. 25 of Mr. Peltokangas's April 10, 2025 declaration, and Laurance Yahia's [(signatory to the MSA)] deposition" in order to oppose summary judgment.  Opp. at 28.  But Plaintiffs' barebones efforts to explain fail to meet the requirements of Rule 56(d).  The only explanation that Plaintiffs provide to justify the need for this discovery is to "further demonstrate LMPIC's inability to satisfy a

---

[25] The First Circuit has explained that even though "[p]rior to 2010, what is now Rule 56(d) was denominated as Rule 56(f)" and "the text of this subsection has undergone minor revisions," courts should "treat cases decided under former Rule 56(f) as authoritative when deciding post-2010 cases arising under Rule 56(d)." *Emigrant*, 37 F.4th at 724 (citations omitted).

judgment." *Id.* at 29.  But as discussed above, the Court has assumed for the purposes of this motion that LMPIC cannot satisfy a judgment in this case.  *See supra* note 21.  Thus, additional discovery on solvency would have no influence on the outcome of the summary judgment motion. Nor do Plaintiffs provide any explanation as to how the other categories of discovery they seek would impact summary judgment.  *See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 989 (1st Cir. 1988) (denying additional discovery where party "did not show how the facts sought, if obtained, would help defeat the motions for summary judgment.").

Moreover, the Court already provided Plaintiffs additional time to conduct discovery before LMIC filed its motion for summary judgment.  "When a party has had a full and fair opportunity to obtain relevant facts earlier in a case and has forgone that opportunity, there will seldom be good cause to grant the party's request for additional discovery through the medium of Rule 56(d)."  *Emigrant*, 37 F.4th at 726; *see also Vargas-Ruiz v. Golden Arch Dev., Inc.*, 368 F.3d 1, 5 (1st Cir. 2004) (finding additional discovery unwarranted when party "had available to him a full complement of discovery devices" earlier in the case but "chose not to use these devices in a timely fashion").  On February 13, 2025, the Court held a status conference, during which the Court delayed the filing of LMIC's motion for several weeks, granted Plaintiffs leave to depose Mr. Peltokangas, and ordered LMIC to provide a draft of the motion to Plaintiffs at least two weeks in advance of its filing with the Court.  *See* Dkt. 83 (clerk's notes for the status conference). Between the lack of explanation as to how the discovery will impact summary judgment and the failure to justify the delay in seeking this discovery, Plaintiffs cannot show good cause exists for additional discovery.  *See Emigrant*, 37 F.4th at 725–26 ("The absence of good cause ordinarily will be reason enough to deny Rule 56(d) discovery.").

## V.     <u>**Conclusion**</u>

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 84) is GRANTED.

**So Ordered.**

                                                      /s/ Brian E. Murphy
                                                      Brian E. Murphy
Dated:  September 5, 2025            Judge, United States District Court