**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| WATTS, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **23-12845-BEM** |
| | ) | |
| LIBERTY MUTUAL PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**MURPHY, J.**

This is a putative class action in which Plaintiffs Diane Watts, Anthony Watts, and Adam Pizzitola (collectively, "Plaintiffs") allege that Defendant Liberty Mutual Personal Insurance Company ("LMPIC") breached car insurance policies by limiting rental car benefits. Before the Court now is Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23 ("Plaintiffs' Motion"). For the reasons set forth below, the Court will grant Plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3) but will deny Plaintiffs' motion for certification under Federal Rule of Civil Procedure 23(b)(2).

I.    **Background**

A.    **Factual Background**

The Court incorporates by reference the factual background set forth in its prior order. *See* Dkt. 162. In general terms, this case concerns the interpretation of a rental car coverage provision

in certain car insurance policies. Plaintiffs each purchased car insurance policies through LMPIC.[1] In relevant part, the policies contained an Optional Transportation Expenses Coverage endorsement ("OTEC Endorsement") which provided that, in the event of an accident, LMPIC would pay the expense of a rental vehicle while repairs were performed on the damaged vehicle. If the vehicle was declared a total loss, then LMPIC would pay for a rental vehicle for the "period of time reasonably required" to replace the total loss vehicle, up to a maximum of 30 days, or $900. Specifically, the policies stated under "Optional Transportation Expenses Coverage":

> [W]e will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for:
>
> . . .
>
> 2. Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto**.
>
> . . .
>
> Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto**.

Dkt. 102-3 at 70 (emphases in original).

**B.    Procedural History**

On November 21, 2023, Plaintiffs brought this suit alleging that LMPIC prematurely terminated rental car benefits in breach of their insurance policies. Dkt. 1. Plaintiffs filed an amended complaint on February 23, 2024, asserting claims for breach of contract (Count I); vexatious conduct with respect to the policies issued in Missouri (Count II); violations of Illinois Section 155 of the Illinois Insurance Code with respect to the policies issued in Illinois (Count III);

---

[1] Mr. and Ms. Watts's policy contained Illinois-specific coverage forms, and Mr. Pizzitola's policy contained Missouri-specific coverage forms.

and declaratory judgment (Count IV).[2]  *See generally* Dkt. 28.  Generally, Plaintiffs contend that LMPIC has a policy or practice of limiting rental car coverage without determining the reasonable amount of time needed for an insured to replace a totaled vehicle as required under their policies, and that their rental car coverage was prematurely terminated based on this practice.  *See, e.g.*, *id.* ¶¶ 101–05.

Plaintiffs now seek to bring claims on behalf of themselves and classes of similarly situated LMPIC customers pursuant to Fed. R. Civ. P. 23.  Dkt. 100.  Plaintiffs seek to define the class for their breach of contract claim (the "Class") as:

> All insureds in the United States who have been policyholders of automobile insurance policies sold by [LMPIC] that included Optional Transportation Expenses Coverage, who, within the applicable statute of limitations, have made a claim to [LMPIC] for Transportation Expenses Coverage as a result of a total loss of a vehicle damaged in a covered loss, and as to whom [LMPIC] limited the amount of time such coverage is provided to a period of time less than 30 days.

Dkt. 101 ("Mem.") at 9.  Plaintiffs also seek to define two subclasses for their bad faith claims:

> All insureds who are members of the Class and who resided in Missouri at the time their vehicles suffered damage that resulted in [LMPIC] determining their vehicles were a total loss (the "Missouri Subclass").

> \*\*\*\*

> All insureds who are members of the Class and who resided in Illinois at the time their vehicles suffered damaged that resulted in [LMPIC] determining their vehicles were a total loss (the "Illinois Subclass").

*Id.*  LMPIC opposes the motion.  Dkt. 150 ("Opp.").  The Court heard oral arguments on October 27, 2025, and took the matter under advisement.

---

[2] Both the initial and amended complaints named four additional defendants.  Liberty Mutual Group, Inc., LMHC Massachusetts Holdings, Inc., and Liberty Mutual Holding Company, Inc. were dismissed without prejudice on May 4, 2024.  Dkt. 58.  On September 5, 2025, the Court granted Liberty Mutual Insurance Company's motion for summary judgment.  Dkt. 162.

## II.    <u>Standard of Review</u>

Class actions serve as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).  A court may certify a class only if it finds that the proposed class satisfies all the requirements of Fed R. Civ. P. 23(a) ("Rule 23(a)") and that class-wide adjudication is appropriate for one of the reasons set forth in Fed. R. Civ. P. 23(b) ("Rule 23(b)").  *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003). "Rule 23(a) requires that: (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir. 2008) (citing Fed. R. Civ. P. 23(a)).  Plaintiffs must also demonstrate the adequacy of counsel.  *See* Fed. R. Civ. P. 23(a)(4), 23(g); *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460–61 (1st Cir. 2009).  Plaintiffs seek certification under Rule 23(b)(3), which states that the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is superior to other methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Plaintiffs also seek certification under Rule 23(b)(2), which is warranted where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

For both Rule 23(a) and 23(b), Plaintiffs must establish each of the elements "by a preponderance of evidence." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015).  Because "rigorous analysis" is necessary when testing a plaintiff's assertions, the court may have to consider the merits. *Gonzalez v. XPO Last Mile, Inc.*, 579 F. Supp. 3d 252, 259 (D. Mass. 2022) (citations omitted).  In doing so, the court may "test disputed premises," *Tardiff v. Knox Cnty.*, 365

F.3d 1, 4 (1st Cir. 2004), and "formulate some prediction as to how specific issues will play out," *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).

### III.    Discussion

At the outset, the Court notes that much of the current dispute over class certification turns on the meaning of the policy provision in question. When the legal and factual premises of a case are disputed, "the court may 'probe behind the pleadings,' to 'formulate some prediction as to how specific issues will play out' in order to assess whether the proposed class meets the legal requirements for certification." *New Motor Vehicles*, 522 F.3d at 17 (citations omitted). However, the First Circuit has warned courts not to allow "the defendant to turn the class-certification proceeding into an *unwieldy* trial on the merits." *In re PolyMedica Corp. Secs. Litig.*, 432 F.3d 1, 17 (1st Cir. 2005). As discussed more below, and because neither party has moved yet to resolve the question of the policies' meaning, at this juncture, with the record before it, the Court will not rule on the correctness of Plaintiffs' interpretation of the policies and its requirements. As such, the Court cannot accept LMPIC's arguments that require a different interpretation of the policies. After resolving the meaning of the policies, the Court does not foreclose the possibility of revisiting the certification issue. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also New Motor Vehicles*, 522 F.3d at 27.

### A.    23(a) Numerosity

To satisfy the numerosity requirement, a plaintiff must demonstrate that the class is so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). While the requirement presents a "low hurdle," *S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007), "mere speculation as to the number of parties involved is not sufficient to satisfy Rule 23(a)(1)," *Swack v. Credit Suisse First Bos.*, 230 F.R.D. 250, 258

(D. Mass. 2005) (quoting 7A *Wright & Miller's Federal Practice and Procedure* § 1762 (2004)). A potential class exceeding 40 potential members is generally sufficient. *Garcia-Rubiera*, 570 F.3d at 460 ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001))); *see also Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011).

LMPIC does not dispute that Plaintiffs have met their burden as to numerosity. Upon independent review, the Court finds that this requirement is met. Plaintiffs have identified over 4,000 potential class members based on LMPIC's claims data, Mem. at 22. Based on this, the Court finds that the proposed class is sufficiently numerous as to make joinder of all members impracticable.

**B.**    **23(a) Commonality**

The commonality requirement is met when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, a plaintiff must demonstrate that the proposed class's claims "depend upon a common contention," the resolution of which is "central to the validity" of each of the class's claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 28–29 (1st Cir. 2019). The commonality requirement is a "low bar." *New Motor Vehicles*, 522 F.3d at 19. At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

According to Plaintiffs, the ultimate dispute is whether LMPIC breached the insurance policies it issued to each class member by failing to determine the amount of time "reasonably

required to replace the insured vehicle" before terminating rental car benefits at less than the 30-day maximum, and whether LMPIC conducted that determination for each insured. Mem. at 23. Plaintiffs argue that the OTEC Endorsement in each policy required LMPIC to make that determination before cutting short the 30-day rental car benefit; LMPIC argues it did not.

There is no dispute that the material terms of the insurance contracts are essentially the same, if not identical. The Court could therefore interpret the common terms of these form contracts on a class-wide basis. *See Smilow*, 323 F.3d at 39 ("The common factual basis is found in the terms of the contract, which are identical for all class members. The common question of law is [how to interpret that contract]."); *see also Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013) (noting that "federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member").[3]

LMPIC argues there is no common question because Plaintiffs cannot succeed on their breach of contract claim without prevailing on the individualized question of what time was reasonably required for each insured to replace their totaled vehicle. Opp. at 17. But Rule 23(a)(2) "does not require that all questions of law or fact raised in the litigation be common." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 174 (D. Mass. 2012). "[P]laintiffs need not show

---

[3] Other circuit courts have taken similar approaches, approving the certification of classes in challenges to form contracts. *See, e.g.*, *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020) (affirming certification where the "relevant contract term was uniform"); *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, 915 F.3d 1098, 1102 (7th Cir. 2019) ("With such a form contract, almost universally signed without negotiation or modification, there is no reason to think that the interpretation of the provision will vary from one signatory to another, and therefore the issue is one that is capable of a common answer and for which that common question predominates over questions affecting individual class members."); *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 684 (6th Cir. 2013) ("The determination of the scope and validity of the agreements involved common questions of law that lend themselves well for class certification.").

that answering their common question will completely end the litigation; they need only show that it will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Bank of Am. Home Affordable Modification Program (HAMP) Cont. Litig.*, 2013 WL 4759649, at *5 (D. Mass. Sept. 4, 2013) (quoting *Wal-Mart*, 564 U.S. at 350). The question of whether the OTEC Endorsement requires a determination of the reasonable time to find a replacement vehicle is central to the breach of contract. The question of what time was reasonably required for each insured is relevant only if Plaintiffs' interpretation of the policies is wrong. *See Stechert v. Travelers Home & Marine Ins. Co.*, 779 F. App'x 958, 960, 962 (3d Cir. 2019) (holding that defendant insurer's policy of providing only five days of coverage "is in direct conflict with the limitation specified in [plaintiff's] policy, which provides for 30-days of coverage in the absence of a determination that it is reasonable for the insureds to obtain alternative transportation sooner").

Under Plaintiffs' interpretation, 30 days of benefits is the starting point under the policies that may be limited *only* by LMPIC's insured-specific determination that a shorter time is all that is reasonably required, which would render the results of any determination that should have been made (but was not) irrelevant. *See Parent/Pro. Advoc. League*, 934 F.3d at 28 ("[C]ommon answers typically come in the form of 'a particular and sufficiently well-defined set of allegedly illegal policies [or] practices' that work similar harm on the class plaintiffs." (quoting *Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014))). Thus, at this stage of the litigation, the Court finds that Plaintiffs have satisfied the commonality requirement.

## C.    23(a) Typicality

The typicality requirement mandates that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality does not require that all putative class members share identical claims or defenses. *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) (citing *Swack*, 230 F.R.D. at 260).

Instead, typicality is established if the claims of the class representative "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based upon the same legal theory." *Garcia-Rubiera*, 570 F.3d at 460 (alterations in original) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). "The typicality requirement 'is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees,' and, to that end, requires 'that common claims are comparably central' to both the claims of the named plaintiffs and those of the absentees." *Connor B.*, 272 F.R.D. at 296 (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)). The "'requirement is not highly demanding' because 'the claims only need to share the same essential characteristics, and need not be identical.'" *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 26 (D. Mass. 2003) (quoting 5 *Moore's Federal Practice* § 23.24[4]). However, typicality "may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation." *Shanley v. Cadle*, 277 F.R.D. 63, 69 (D. Mass. 2011) (quoting *Credit Suisse*, 253 F.R.D. at 23).

Here, LMPIC contends that the class representatives, "for their own idiosyncratic reasons," spent more time than reasonably required searching for replacement vehicles, such that their "claims are not typical of the class they seek to represent." Opp. at 22. As with commonality, however, LMPIC incorrectly describes the Plaintiffs' claims at issue. Under Plaintiffs' theory of the case, the actual time reasonably required is not relevant at all. Instead, Plaintiffs and all putative class members share the same claims: that LMPIC's practice of limiting rental car benefits without first determining the time reasonably required for replacement breached their insurance contracts. The focus is whether a determination was made, not what the correct determination

should have been.[4]  Under this theory of the case, the Court finds that typicality has been met.  *See Gonzalez*, 579 F. Supp. 3d at 262 (finding typicality met where both class representatives' and putative class's alleged injuries arose out of a common policy and theory of harm).

### D.    23(a) Adequacy of Representation

The adequacy requirement is met where the representative party will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Adequacy is satisfied if (1) there is no conflict between the interest of the named plaintiffs and the class members and (2) counsel chosen by the named plaintiffs are qualified and able to litigate the claims vigorously.  *S. States Police*, 241 F.R.D. at 88 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).  "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable."  *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012).  As with typicality, "unique defenses" may defeat adequacy.  *Shanley*, 277 F.R.D. at 69 (quoting *Credit Suisse*, 253 F.R.D. at 23).  Merely lacking identical interest, however, is not enough for a representative party to be found inadequate.  *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345–46 (1st Cir. 2022) (citing *Cohen v. Brown Univ.*, 16 F.4th 935, 945 (1st Cir. 2021)).

LMPIC contends that adequacy cannot be met here because the "proposed methodologies [to calculate damages] would impermissibly favor Plaintiffs over other class members they seek

---

[4] Under this theory—at most—such issues regarding the reasonableness of time to replace the vehicle impact only damages, which does not defeat typicality.  *See Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30, 39 (D. Mass. 2012) ("That damages may differ among the various class members, for example, 'is of little consequence to the typicality determination when the common issue of liability is shared.'" (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 28 (D.D.C. 2001))).

to represent." Opp. at 23. But at this juncture, the Court does not find that either proposed methodology creates a conflict between Plaintiffs and the putative class members. While LMPIC has identified possible issues with Plaintiffs' methodologies, such issues do not rise to the level of conflict to prevent certification. For example, there is no indication that Plaintiffs selected these methodologies to favor their own recovery. Further, "[h]ypothetical conflicts, particularly regarding damages allocation, are insufficient to defeat a showing of adequacy under Rule 23(a)(4)." *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *13 (D. Mass. Oct. 16, 2017). Thus, at this stage of the litigation, the Court finds that the named plaintiffs are adequate representatives.

Additionally, LMPIC "does not contest, for the purposes of Rule 23, that Plaintiffs' counsel is qualified to serve as counsel for the purported class." Opp. at 22 n.10. Plaintiffs' counsel's background and experience, *see generally* Dkt. 102-30, suffice to qualify them as competent and adequate class counsel.[5]

### E.    23(b)(3) Class

Plaintiffs seek to certify the class under Rule 23(b)(3). "To certify a class under Rule 23(b)(3), a judge must further find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' ('predominance'), and that 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy' ('superiority')." *New Motor Vehicles*, 522 F.3d at 18 (quoting Fed. R. Civ. P. 23(b)(3)). A court must take "a close look at the case before it is accepted as a class action." *Id.* (quoting *Amchem*, 521 U.S. at 615).

---

[5] The Court also finds that appointment of Plaintiffs' counsel as class counsel comports with the factors in Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1).

1.    **Predominance**

The predominance inquiry aims to "test whether any dissimilarity among the claims of class members can be dealt with in a manner that is not 'inefficient or unfair.'"  *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) (quoting *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)).  In conducting the predominance analysis, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."  *Waste Mgmt. Holdings*, 208 F.3d at 298.  While the "predominance" requirement is much more demanding than the Rule 23(a) prerequisite of commonality, it does not require complete uniformity.  *See Amchem*, 521 U.S. at 623–24.  It "requires merely that common issues predominate, not that all issues be common to the class."  *Smilow*, 323 F.3d at 39.

LMPIC contends that predominance is not met here because "sorting out which class members suffered an injury in fact can only be done by reviewing the individual circumstances of each class member's claim" and "more than a *de minimis* amount of class members suffered no economic injury."  Opp. at 25–26.  These arguments again turn on LMPIC's view that the time reasonably required to acquire a replacement vehicle is a necessary showing for each claim, *see id.* at 25–26, rather than the breach and harm flowing from LMPIC's failure to make that determination in the first place.  But until the meaning and scope of the policy's coverage has been established, the Court cannot conclude that individual determinations predominate over the common issues.  *See Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 107–08 (E.D. Pa. 2002) ("To deny class certification on the ground that the adjudication of the class claim will involve the review of 'hundreds or thousands' of medical markets in order to determine what the 'usual charges' were for class members, when the very basis of plaintiffs' claim is that the determinations were never made, defies common sense.").

Even the risk that the policies may require an individualized assessment of the time reasonably required to replace each insured's vehicle in order to determine whether a potential class member has suffered an injury, or otherwise to measure damages, does not defeat predominance.

> If . . . evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms.  For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether.

*Smilow*, 323 F.3d at 39–40 (citations omitted).  Additionally, courts consistently hold that the "need for individual damage determinations . . . does not alone defeat predominance." *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 406 (D. Mass. 2017); *see Solodyn*, 2017 WL 4621777, at *18  (explaining that "[a]lthough the predominance inquiry requires plaintiffs to show they will be able to provide a damages model on a class-wide basis . . . it is well-established that [t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)" (internal quotation marks and citations omitted)).

Additionally, Plaintiffs propose a nationwide class, Mem. at 9, and in support of which have provided a survey to illustrate that the relevant laws and legal principles are materially the same in each state, *see generally* Dkt. 108-2.  LMPIC does not dispute that the relevant state laws and legal principles are sufficiently similar to be amenable to class-wide resolution.  *See generally* Opp.  Various courts across the country have certified multi-state classes alleging breaches of contract that involve form contracts.  *See Kolbe*, 738 F.3d at 441 (collecting cases) ("Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member."); *see also Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *11 (C.D. Cal. Dec. 11, 2017)

13

(collecting cases) (certifying nationwide breach of contract case). Therefore, this Court concludes that the variance in state laws and statutes of limitations do not bar class certification under Rule 23(b)(3). *See, e.g.*, *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262–63 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Moreover, any variations that may be identified can be managed and modified at a later stage, if necessary. *See, e.g.*, *Payne*, 216 F.R.D. at 27–28. Thus, the Court finds that common issues predominate based on the current record.

### 2.    Superiority

The superiority inquiry requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and identifies several "matters pertinent" for the court to consider. Fed. R. Civ. P. 23(b)(3). These are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* "Rule 23 has to be read to authorize class action in some set of cases where seriatim litigation would promise such modest recoveries as to be economically impracticable." *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66–67 (1st Cir. 2010).

LMPIC argues that a class action is not superior in this case because it "would devolve into a series of mini-trials." Opp. at 30. While the Court recognizes that there is a risk that this situation will arise, such fact-intensive and individualized inquiries will be necessary only if LMPIC prevails on the policies' meaning. As explained above, the Court cannot make that determination at this stage—or on the record currently before it. *See supra* Section III(B). The resolution of the policies' meaning will determine whether such "mini-trials" concerning the use of the alleged

7-day minimum and the amount of time to reasonably replace the vehicles will be necessary at all. Further, given the minimal damages at issue for each putative class member,[6] separate actions would be impractical. *See Gintis*, 596 F.3d at 68 (noting that "there is a real question whether the putative class members could sensibly litigate on their own for these amounts of damages"); *see also Smilow*, 323 F.3d at 41 ("The class certification prerequisites should be construed in light of the underlying objectives of class actions. . . . The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation." (citations omitted)). Thus, considering the Rule 23(b)(3) factors, the Court finds that determining *at least* the policies' meaning on a class-wide basis would be a superior method of adjudicating this dispute than individual litigations. *See Gintis*, 596 F.3d at 68.

### F.    23(b)(2) Class

Plaintiffs also seek certification under Rule 23(b)(2). Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).[7] Importantly,

---

[6] The OTEC Endorsement capped recoverable expenses for each insured at $30 per day, for a maximum of $900. *See, e.g.*, Dkt. 28 ¶¶ 34, 70. Plaintiffs allege that LMPIC terminated rental car benefits after only 7 days pursuant to a company guideline, rather than an individualized determination, *see, e.g.*, Mem. at 11–15, so many claims arguably would be capped at $690 per insured.

[7] In *Wal-Mart*, the Supreme Court expressed skepticism as to whether class certification under Rule 23(b)(2) is ever appropriate for a class seeking monetary damages. *See Wal-Mart*, 564 U.S. at 362 (explaining that "individualized monetary claims belong in Rule 23(b)(3)").

certification under Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment; *see DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 103 (D. Mass. 2010).

The Court finds that Plaintiffs primarily seek monetary damages, and thus certification under Rule 23(b)(2) is not appropriate. At no point do Plaintiffs assert that injunctive relief is their primary remedy sought. *Cf.* Mem. at 35 (arguing for certification under Rule 23(b)(2) "[i]n the alternative, and only if the Court declines to certify a class under Rule 23(b)(3)"). While, in both their reply and at oral arguments, Plaintiffs contend that the Court should certify both a Rule 23(b)(3) and a Rule 23(b)(2) class, *see, e.g.*, Dkt. 165 at 22 ("While Plaintiffs may not be able to recover monetary damages pursuant to Rule 23(b)(2), the Court can still certify Plaintiffs' injunctive claims seeking a declaration that [LMPIC] is in violation of its uniform contractual obligations and must change its rental coverage adjustment practices." (citing *Brown v. Google, LLC*, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022)), Plaintiffs fail to demonstrate how the injunctive relief sought was more than incidental where such a declaration would primarily benefit policyholders who have not yet received any rental benefits, and therefore are outside of Plaintiffs' class definition, *see* Mem. at 9 (defining Class as policyholders who have made a claim for Transportation Expenses Coverage). Thus, certification under Rule 23(b)(2) is not appropriate here. *See Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970, 978 (5th Cir. 2000) ("These plaintiffs have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages."); *see also Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass. 2009) (denying class certification under Rule 23(b)(2) because "monetary relief [was plaintiffs'] primary objective," despite all Rule 23(a) factors having been met).

IV.    <u>**Conclusion**</u>

For the foregoing reasons, Plaintiffs' motion to certify the class, Dkt. 100, is GRANTED

in part.[8]  The Court certifies Plaintiffs' Rule 23(b)(3) class and denies certification of Plaintiffs'

Rule 23(b)(2) class.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Dated:  December 2, 2025          Judge, United States District Court

---

[8] The Court acknowledges that "[w]hen the decision on class certification is made before full class discovery has been completed, as here, it is necessarily more predictive . . . [and] the decision may require revisiting upon completion of full discovery." *New Motor Vehicles*, 522 F.3d at 27 (citations omitted).  The Court, therefore, reiterates that this decision does not foreclose the possibility of revisiting the certification issue once merits discovery has been finalized or should determination on the policies' meaning warrant reconsideration.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").