**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **WATTS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,**<br><br>**Defendant.** | **Civil Action No. 23-12845-BEM** |

**MEMORANDUM AND ORDER ON**
**<u>PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>**

**MURPHY, J.**

Plaintiffs Diane Watts, Anthony Watts, and Adam Pizzitola, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this class action alleging that Defendant Liberty Mutual Personal Insurance Company ("LMPIC") breached the terms of its insurance policy by prematurely terminating compensation for rental vehicles without first determining the amount of rental time Plaintiffs reasonably required to replace an insured vehicle declared a total loss. Before the Court now are LMPIC's motion for summary judgment, Plaintiffs' motion for partial summary judgment on their breach of contract claim, and Plaintiffs' three motions to strike.

For the reasons set forth below, the Court will grant Plaintiffs' motion for partial summary judgment on the breach of contract claim only as to liability, deny LMPIC's motion for summary judgment, and deny Plaintiffs' motions to strike as moot.

### A. Factual Background

The following facts are undisputed.[1] LMPIC is an insurance company that sells personal automobile insurance policies in various states, including a policy that insures direct and accidental losses to a covered vehicle when that vehicle is involved in an accident. Dkt. 234 ¶¶ 3–5. Those insured by this policy may purchase rental coverage under an insurance contract referred to as the Optional Transportation Expenses Coverage endorsement ("OTEC Endorsement"). Dkt. 239 ¶ 24. When an insured's vehicle is declared a total loss, under the OTEC Endorsement, LMPIC pays the cost of their transportation expenses, including the cost of their rental vehicle while they seek a replacement vehicle. *Id*. The extent of this coverage is subject to the limits of the policy. *Id.* In relevant part, the OTEC Endorsement provides:

> If . . . your vehicle is declared a total loss, the following applies . . . we will pay, without application of deductible, the daily amount shown on the policy Declarations Page to a maximum of 30 days for . . . Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of your covered auto . . . . Our payment will be limited to that period of time reasonably required to repair or replace your covered auto or the non-owned auto.

Dkt. 234 ¶ 7.[2] While the precise daily- and per-accident dollar limits on benefits vary depending on what is listed in each individual policy's "[d]eclarations [p]age," *id.* ¶¶ 11, 134, for class representatives, the limit of recovery was listed as "$30 Per Day" and "$900 Per accident," *id.* ¶¶ 86, 99.[3]

---

[1] Unless otherwise indicated, citations to Dkt. 221, Dkt. 234, and Dkt. 239 refer to the facts as admitted or substantially agreed upon by the parties.

[2] The wording of this policy differs slightly across states, but the material provisions remain the same. *See* Dkt. 239 ¶ 28.

[3] As LMPIC acknowledges, even in states in which the OTEC Endorsement forms do not include the "maximum of 30 days" language, coverage is limited to effectively thirty days because the daily dollar amount limit multiplied by thirty yields the maximum amount of recovery per accident listed on the policy. *See* Dkt. 191 at 16 n.3.

Under the OTEC Endorsement, an insured receives an automated email stating their daily rental coverage limit upon reporting a claim. *Id.* ¶¶ 13–14. The insured may elect to rent a vehicle through Enterprise Rent-A-Car ("Enterprise"), facilitated by LMPIC, or rent a vehicle independently. *Id.* ¶ 15. Enterprise directly bills LMPIC for rental days that are both authorized by LMPIC and used by the insured, but bills insureds for any extra days unauthorized by LMPIC. *Id.* ¶¶ 16, 33–34.[4] When an insured's vehicle is a potential total loss when a claim is reported, the Enterprise reservation is initially set for seven days, while the vehicle is evaluated. *Id.* ¶ 17. Once LMPIC confirms a total loss has occurred, and communicates a settlement offer for that loss to the insured, LMPIC sets rentals to terminate a further seven days after this communication, in accordance with its internal guideline (the "seven-day guideline"). *Id.* ¶¶ 19, 46.

LMPIC claims that it allows insureds to extend the rental period provided by the seven-day guideline, but the parties dispute the extent to which these extensions are offered and granted in practice. *Id.* ¶¶ 25–26, 29–32. Once a total loss is declared, LMPIC communicates to insureds through a form letter, which states that "[w]e will pay for the rental through" a specified date and "[a]fter this date, payment for the rental vehicle will be your responsibility." Dkt. 208-18 at 5. Plaintiffs deny that any extensions given by LMPIC's adjusters which deviate upwards from the time specified by this letter constitute "a determination of the amount of time reasonably required to replace a totaled vehicle." Dkt. 234 ¶ 46.

**B. <u>Procedural Background</u>**

On November 21, 2023, Plaintiffs filed this suit alleging that LMPIC prematurely terminated rental vehicle benefits in violation of their insurance policies. Dkt. 1. On February 23,

[4] Enterprise also bills insureds for rental expenses that exceed the daily monetary limit specified in the OTEC Endorsement. Dkt. 234 ¶ 35.

2024, Plaintiffs filed an amended complaint ("Complaint" or "Compl."), asserting claims for breach of contract (Count I); vexatious conduct with respect to the policies issued in Missouri (Count II); violations of section 155 of the Illinois Insurance Code with respect to the policies issued in Illinois (Count III); and declaratory judgment (Count IV). *See generally* Dkt. 28. On May 5, 2025, Plaintiffs moved to certify a class, Dkt. 100, and the Court granted Plaintiffs' motion in part on December 2, 2025, certifying the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure, but declining to do so under Rule 23(b)(2), Dkt. 172.

LMPIC moved for summary judgment on May 20, 2026. Dkts. 190–91. On June 1, 2026, Plaintiffs cross-moved for partial summary judgment on the breach of contract claim, asking the Court to find that the OTEC Endorsement "requires [LMPIC] to determine the amount of time reasonably required for the insured to replace the totaled vehicle prior to limiting the duration or dollar amount of OTEC benefits," and to find that "absent such a determination, [LMPIC] may not limit an insured's OTEC benefits to fewer than 30 days or to less than the maximum dollar amount specified in the Policy's declarations sheet for rental benefits." Dkt. 197 at 1; *see* Dkt. 198 at 5. Plaintiffs also filed three motions to strike pertaining to expert opinions and portions of a declaration submitted by LMPIC. Dkts. 203–05.

## II. <u>Legal Standard</u>

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To

succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)).

The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[t]he nonmoving party cannot fend off summary judgment unless it makes a competent demonstration that every essential element of its claim or defense is at least trialworthy." *Price v. Gen. Motors Corp.*, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis omitted). "Where the non-moving party bears the ultimate burden of proof, the non-moving party 'must present definite, competent evidence to rebut the motion.'" *Satanic Temple, Inc. v. City of Boston*, 684 F. Supp. 3d 21, 30 (D. Mass. 2023) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)), *aff'd*, 111 F.4th 156 (1st Cir. 2024). "Where, as here, the parties cross-move for summary judgment, the court must examine each motion separately, drawing inferences against each movant in turn." *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (internal quotation marks and brackets omitted) (quoting *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 20–21 (1st Cir. 2018).

## III. Discussion

### A. Breach of Contract

The Court first addresses Plaintiffs' and LMPIC's cross-motions for summary judgment on the breach of contract claim.[5] Plaintiffs' motion seeks summary judgment on their breach of contract claim, and specifically asks the Court to rule that the OTEC Endorsement "requires

[5] As Plaintiffs' declaratory judgment claim seeks a declaration interpreting the contract as asserted in their breach of contract claim, Compl. at 30, and LMPIC's arguments seeking summary judgment on the declaratory judgment claim are identical to those against the breach of contract claim, Dkt. 191 at 25, the Court analyzes the two claims simultaneously.

[LMPIC] to determine the amount of time reasonably required for the insured to replace the totaled vehicle prior to limiting the duration or dollar amount of OTEC benefits; absent such a determination, [LMPIC] may not limit an insured's OTEC benefits to fewer than 30 days or to less than the maximum dollar amount specified in the Policy's declarations sheet for rental benefits." Dkt. 197 at 1; *see* Dkt. 198 at 5. LMPIC seeks summary judgment on the grounds that there is no individualized determination requirement in the contract, and that even if there was, LMPIC fulfilled it through the seven-day guideline and grants of extensions beyond seven days. Dkt. 191 at 9–21. LMPIC also argues that summary judgment is warranted because certain class members without damages lack Article III standing and cannot establish an essential element of the breach of contract claim. *Id.* at 21–23.

### 1. <u>LMPIC's Contractual Obligation</u>

#### a. <u>Individualized Determination</u>

The OTEC Endorsement states that LMPIC will pay "the daily amount shown on the policy Declarations Page to a maximum of 30 days for . . . [a]dditional transportation expenses incurred by you for renting a substitute auto due to a total loss of your covered auto . . . limited to that period of time reasonably required to repair or replace your covered auto or the non-owned auto." Dkt. 234 ¶ 7. LMPIC argues that Plaintiffs' desired interpretation of the OTEC Endorsement "seeks to add non-existent terms and obligations into the policy." Dkt. 191 at 11–12. According to LMPIC, the OTEC Endorsement's "use of the phrase 'expenses incurred by you' clearly puts insureds on notice that LMPIC will only cover rental expenses with proof of expenses actually incurred." *Id.* at 12; *see* Dkt. 219 at 13–15. Further, LMPIC argues that under insurance contracts like the OTEC Endorsement, "insureds are promised payment for their losses, not any particular process." Dkt. 191 at 13; *see* Dkt. 219 at 15–18.

Plaintiffs argue that "the OTEC [Endorsement] is a Policy limitation, and [LMPIC] may not terminate or limit the duration of OTEC benefits unless and until it determines the amount of time reasonably required for the insured to replace the totaled vehicle." Dkt. 198 at 13; *see* Dkt. 206 at 7–8. In Plaintiffs' telling, the limitation is "insured-specific," because the language "your covered auto" "refer[s] to the specific vehicle identified on the insured's declaration page," and because "[t]he 'time reasonably required' to replace that specific vehicle necessarily depends on the individual insured's circumstances." Dkt. 198 at 14.

The Court agrees that the phrase "reasonably required to repair or replace your covered auto" implies that LMPIC is obligated to make an individualized determination of what each insured reasonably requires to replace their vehicle. The OTEC Endorsement's reference to "*your* covered auto" means that, at minimum, the time "reasonably required" must vary with respect to the specific vehicle an insured seeks a suitable replacement for, if not with respect to other individualized factors. LMPIC itself states that "the correct way to read this OTEC [Endorsement] is that 'your covered auto' modifies 'period of time reasonably required.'" Dkt. 219 at 16. The time reasonably required to replace a minivan after a hospital visit in an area lacking nearby vehicle dealerships may differ from the time reasonably required to replace a sedan in an area with many in stock. The remainder of the OTEC Endorsement's language does not suggest a different conclusion. The phrase "expenses incurred by you for renting a substitute auto" specifies which costs LMPIC will ultimately cover. However, it does not displace the OTEC Endorsement's specification that insureds are entitled to the duration of coverage that they reasonably require.

Admittedly, the contract allows LMPIC some discretion in deciding the reasonably required period of coverage, because it does not contain language requiring that LMPIC consider any specific factors. However, that discretion has bounds. *See Greer Props., Inc. v. LaSalle Nat.*

*Bank*, 874 F.2d 457, 460 (7th Cir. 1989) ("In Illinois, 'a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously.'" (quoting *Foster Enters., Inc. v. Germania Fed. Sav. and Loan Ass'n*, 97 Ill. App. 3d 22, 30 (1981))).[6] It is difficult to imagine how LMPIC could fulfill its obligation to provide insureds a reasonably required period of time to replace their specific vehicle without considering an individual's circumstances and making a determination accordingly.

Another court has also interpreted a nearly identical contract to require the insurer to make an individualized determination of the reasonably required period of rental coverage. In *Stechert v. Travelers Home & Marine Ins. Co*., 779 F. App'x 958, 959 (3d Cir. 2019), a case upon which Plaintiffs rely, the insurer's policy stated that "we will pay, without application of a deductible, up to the amount per day to a maximum as shown in Declarations for . . . Transportation expenses incurred by you . . . . Our payment will be limited to that period of time reasonably required to repair or replace the [sic] 'your covered auto.'"[7] The insurer in *Stechert* communicated that coverage for a rental vehicle would be limited to five days, leading insureds to purchase a vehicle they were unsatisfied with because of their belief that they could not extend the rental coverage period. *Id.* at 960. LMPIC argues that *Stechert* is inapplicable, because the case "was not about whether the insurer made a determination as to the reasonable amount of time to replace a vehicle, but whether the insurer's conduct caused the insured to purchase an inadequate replacement vehicle." Dkt. 219 at 20. However, while the damages at issue in *Stechert* stemmed from the

---

[6] Plaintiffs assert claims for breach of contract under the laws of 36 states. *See* Dkt. 219 at 9. The Court cites to Illinois and Missouri contract law, as the parties do, because neither party has identified material differences in contract law that would affect analysis of disputed issues. Class representatives signed OTEC Endorsements in Illinois and Missouri. *See* Dkt. 200-1 at 3; Dkt. 200-2 at 3.

[7] *Stechert* "is not an opinion of the full court and . . . does not constitute binding precedent" in the Third Circuit, and in any case is not binding in the First Circuit, but the Court considers it persuasive here. 779 F. App'x at 958 n.*.

inadequate replacement vehicle, the case squarely interpreted the insurance contract to require an individualized determination of the rental time reasonably required by insureds. The Court ruled that the "5-day limitation is in direct conflict with the limitation specified in the Stecherts' policy, which provides for 30-days of coverage in the absence of a determination that it is reasonable for the insureds to obtain alternative transportation sooner."[8] *Stechert*, 779 F. App'x at 960; *see also Stechert v. Travelers Home & Marine Ins. Co.,* 2018 WL 2267447, at *9 (E.D. Pa. May 17, 2018), *rev'd and remanded on other grounds*, 779 F. App'x 958 (3d Cir. 2019) ("[I]t logically follows from the policy language outlining the ETE benefit that a determination of the amount of time insureds reasonably require to replace their vehicles must be made prior to terminating and/or limiting ETE benefits.").[9]

LMPIC argues that insureds are not entitled to an individualized determination because of the principle that insurance contracts promise to compensate for losses, and do not promise any particular process. Dkt. 191 at 13–15. LMPIC analogizes to *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 890 (7th Cir. 2011), in which the Seventh Circuit denied class certification on a breach of contract claim based on the common use of an allegedly flawed valuation method to calculate hail damages. LMPIC also relies on *Drummond v. Progressive Specialty Ins. Co.*, 142 F.4th 149, 157 (3d Cir. 2025), which was decided by the Third Circuit after *Stechert*, and like *Kartman*, declined to certify a class on a breach of contract claim based on an allegedly flawed

[8] The Court does not adopt *Stechert*'s interpretation that the contract's language provides for thirty days of coverage by default. *See infra* Section III.A.1.b.

[9] The district court in *Stechert* strongly implied that the insurance contract required an individualized determination of the time insureds reasonably require to replace their vehicles, but ruled against the plaintiffs on the grounds that they were offered extensions to their initial five-day period of coverage that were miscommunicated to them. *Stechert*, 2018 WL 2267447, at *9. The Third Circuit reversed, stating that despite the extension offered to plaintiffs, "a factfinder could conclude that the very imposition of a 5 day limitation was contrary to the terms of the insurance policy and that it resulted in pressuring the Stecherts into leasing a replacement car that they would not otherwise have had to acquire." *Stechert*, 779 F. App'x at 962.

method used to calculate the actual cash value of totaled vehicles. However, the OTEC Endorsement mirrors the contract in *Stechert* and is distinct from the contract in *Kartman* and *Drummond*.[10] The Court finds the latter cases distinguishable, because Plaintiffs do not challenge the merits of a particular method used to value property damage. Instead, they challenge the lack of a method used to determine the duration of coverage that they individually required.

Both the plain language of the OTEC Endorsement as well as the *Stechert* decision interpreting nearly identical language support the interpretation that insureds are entitled an individualized determination of the time they reasonably require to replace their covered vehicle.[11] The Court therefore concludes as a matter of law that the OTEC Endorsement requires such a determination.[12]

**b. Thirty-Day Default Rule**

Plaintiffs also request the Court to find the OTEC Endorsement to mandate that "[LMPIC] may not limit an insured's OTEC benefits to fewer than 30 days or to less than the maximum dollar amount specified in the Policy's declarations sheet for rental benefits." Dkt. 198 at 5. The OTEC Endorsement does not impose this thirty-day default rule, and the Court cannot "interpret a contract

[10] Even if *Kartman* were more analogous, it does not necessarily stand for the proposition that insurers can never breach insurance contracts based on their estimation practices. *See Hansen v. Country Mut. Ins. Co.*, 2023 WL 6291629, at *21 (N.D. Ill. Sept. 25, 2023) ("[T]hough policyholders are not entitled to a specific estimation method, an insurer's estimation practice could breach policyholders' contracts if the practice itself is unreasonable or otherwise illegal.").

[11] Plaintiffs also characterize extrinsic evidence—such as testimony from LMPIC's corporate designee regarding the development of the OTEC Endorsement's language, and the comparatively more explicit language of other insurance policies granting coverage for a set number of days—to suggest that the OTEC Endorsement is either ambiguous or requires an individualized determination. Dkt. 198 at 6–10, 18–20. The Court does not address this evidence, having already interpreted the contract to lead to that conclusion based on its plain language.

[12] Even if the Court found the OTEC Endorsement to be ambiguous and "subject to more than one reasonable interpretation" based on LMPIC's arguments, the outcome as to the individualized determination requirement would not change. *Gen. Star Indem. Co. v. Yaseen Odeh*, 2010 WL 2925873, at *2 (N.D. Ill. July 23, 2010) (citing *U.S. Fire Ins. Co. v. Schnackenberg*, 88 Ill. 2d 1, 4 (1981)). "[I]n such instances, the provision is interpreted in favor of the insured and against the insurer." *Id.*; *see also, e.g.*, *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355, 357 (Mo. 2017) ("Any ambiguity is resolved in favor of the insured.").

in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011).

In defense of this aspect of their interpretation of the OTEC Endorsement, Plaintiffs point to the OTEC Endorsement's "structure" and the "basic tenet of insurance law that once coverage is triggered, the insurer bears the burden of establishing that a policy limitation applies." Dkt. 238 at 5. However, the plain language of the contract—in particular, the phrases "maximum," "expenses incurred by you," and "reasonably required"—does not support Plaintiffs' view of the OTEC Endorsement's structure. Allowing insureds to receive the "maximum" benefit in the absence of an individualized determination contorts the plain meaning of the word "maximum" into signifying a default entitlement. Further, under Plaintiffs' interpretation, LMPIC could be obligated to pay for thirty days of coverage without thirty days of "expenses incurred" or thirty days of coverage being "reasonably required."[13] That reading would impermissibly "nullify or render provisions [of the contract] meaningless." *Thompson,* 241 Ill. 2d at 442.

Plaintiffs argue that that one of the OTEC Endorsement's phrases, "expenses incurred by you," imposes no limitation on coverage. According to Plaintiffs, LMPIC "prospectively defines the end of coverage—demonstrating that it does not actually treat 'incurred' expenses as a condition precedent to determining the duration of coverage." Dkt. 198 at 22. The practice of

[13] LMPIC further points to "Part D" of their policy, Dkt. 200-1 at 43, which it claims "is expressly incorporated into the OTEC [Endorsement]," as support for the proposition that LMPIC is only obligated to pay for losses that are actually experienced, Dkt. 191 at 12. Part D states that LMPIC "will pay for direct and accidental loss to 'your covered auto.'" Dkt. 200-1 at 43. Because the OTEC Endorsement says that Part D "also appl[ies] to this endorsement *except as changed by this endorsement*," *id.* at 70 (emphasis added), the Court does not consider the language in Part D stating that LMPIC covers "direct and accidental loss." Even if it did consider that language, the Court finds no reason why that language limits coverage further than the OTEC Endorsement's language, which provides coverage only for "expenses incurred by you" during the time "reasonably required to repair or replace your covered auto."

prospectively defining the end of coverage through the seven-day guideline does not shed light on the meaning of the phrase "expenses incurred by you" in the OTEC Endorsement. LMPIC still only pays to cover incurred expenses, because it pays for the number of days the insured actually rented the vehicle, rather than the full, prospectively defined period in every instance.[14] *See* Dkt. 234 ¶ 33.

All told, the contract requires LMPIC to make an individualized determination of the time insureds reasonably require to replace their covered vehicle, and is breached in the absence of that individualized determination. However, when LMPIC fails to make that determination, insureds are not automatically entitled to a default thirty days of coverage.

**2. <u>Breach</u>**

Having so interpreted the OTEC Endorsement, the Court next turns to determining whether LMPIC breached their obligations under the OTEC Endorsement. LMPIC argues that even if "the Court were to find the OTEC [Endorsement] requires LMPIC to make a 'determination,' Plaintiffs' claim still fails for two reasons": (1) "LMPIC, relying on industry data and its own insureds' rental patterns, determined that seven days is more than enough time for the average insured to replace their totaled vehicles" and (2) "in cases where extensions of the seven-day minimum were granted, LMPIC's adjusters *did* consider insureds' individual circumstances by authorizing additional time for which LMPIC would cover transportation expenses." Dkt. 191 at 18–19 (emphasis in original). Plaintiffs argue that LMPIC's seven-day guideline is a "uniform, generalized framework" that does not "assess the individual circumstances of each claim." Dkt. 206 at 13. Plaintiffs also

[14] Plaintiffs also argue that "[LMPIC]'s interpretation" of the phrase "expenses incurred by you" would "condition[] recovery on the insured's ability to front the cost of disputed coverage." Dkt. 198 at 22. However, non-Enterprise renters must already seek reimbursement from LMPIC for their transportation expenses paid out-of-pocket. *See* Dkt. 234 ¶¶ 36–37. In any case, the Court makes no ruling on what the OTEC Endorsement and other applicable law requires with respect to the timing of LMPIC's payments.

contest that such extensions to the seven-day guideline are timely considered: "LMPIC failed to make the required determination *before* limiting benefits and thereby breached the Policy, regardless of whether it ultimately provided additional days of rental coverage in some cases." *Id*. at 16 (emphasis in original). Regardless of the grant of limited extensions under "exceptional circumstances," Plaintiffs argue that the contract was breached because "LMPIC's form communications terminate rental benefits at the time the settlement offer is presented, without any insured-specific analysis, and advise insureds that any additional rental costs will not be covered." *Id*.

LMPIC's argument that the seven-day guideline itself constitutes a determination fails. Even accepting LMPIC's contention that its seven-day guideline is "consistent with how long it generally takes a person to purchase a vehicle," Dkt. 191 at 19, a completely uniform guideline cannot consider what an insured reasonably requires given their specific circumstances. A fixed seven-day period would also breach the contract because it would be impossible for an insured to ever reach the "maximum" of thirty days. *See Thompson,* 241 Ill. 2d at 442 (noting that courts should not "nullify or render provisions [of the contract] meaningless.").[15]

Nor do the purported "extensions" to the seven-day guideline aid LMPIC in this instance. As LMPIC's form letters sent to insureds make clear, no reasonable jury could conclude that LMPIC systematically offers extensions which constitute individualized determinations to insureds. Once a total loss is declared, one of LMPIC's form letters flatly states to insureds that "[w]e will pay for the rental through" a specified date, seven days later, and "[a]fter this date,

[15] Since the seven-day guideline is insufficient on the grounds that it does not provide the required individualized determination of the time reasonably required to replace a covered vehicle, the Court denies as moot Plaintiffs' motion to strike the testimony of Marc J. Spizzirri, Dkt. 205, which concerns the reasonableness of that seven-day guideline. The Court also denies as moot Plaintiffs' motion to strike Paragraphs 42 through 45 of the Declaration of Naomi Trager and Paragraphs 40 through 45 of LMPIC's Statement of Facts, Dkt. 204, which concerns the data considered by LMPIC when developing its seven-day guideline.

payment for the rental vehicle will be your responsibility." Dkt. 208-18 at 5; *see* Dkt. 234 ¶¶ 25, 28, 183.

> **Length of Rental Coverage**
>
> We will pay for the rental through <mm/dd/yyyy>. After this date, payment for the rental vehicle will be your responsibility. However, you're welcome to use the rental as long as needed with our reduced rates.

Dkt. 208-18 at 5 (excerpt from form letter sent to insureds after a total loss determination is made). LMPIC claims that "[i]f a policyholder requests additional time for the rental, adjusters are supposed to use reasonable judgment to determine if the policyholder requires such additional time," Dkt. 234 ¶ 29, and LMPIC's expert "observe[s] that extensions beyond seven days after a total loss offer is communicated are common," *id.* ¶¶ 59–60.[16] However, the form letter makes no mention of the fact that such extensions may be available upon request. While LMPIC maintains that "adjusters are permitted to deviate upwards using their best judgment," the internal documents it cites simply state that deviations should be documented and granted with reasonable judgment, without establishing further criteria for doing so.[17] *Id.* ¶ 162; *see also id.* ¶ 26. In the light most favorable to LMPIC, the evidence suggests that LMPIC sometimes grants extensions, without any formalized criteria for doing so, to insureds with the wherewithal to request one after receiving a form letter that makes no mention of potential extensions and that implies such extensions are not

---

[16] Plaintiffs disputes this expert's calculations as to the commonality of extensions, Dkt. 234 ¶ 54, and moves to strike various portions of her testimony, Dkts. 203, 209. The Court does not address the motion to strike because even if the expert's claims as to the frequency of extensions were true, it would not be enough to prevent LMPIC's breach.

[17] The parties dispute whether extensions, when granted, are granted for reasons pertaining to the time reasonably required by an insured to replace their auto. Dkt. 234 ¶ 46; *compare* Dkt. 193 ¶¶ 29, 44–45 (declaration from LMPIC's senior claims process owner stating that "[e]xtensions are based on a claim's individual facts and the adjuster's discretion" and that "[e]xamples of when adjusters may provide additional rental time include, but are not limited to: the policyholder is in the hospital, extreme weather events that may impact all policyholders in a given market, and certain family and work-related obligations."), *with* Dkt. 206 at 17 ("As the adjuster on the Watts claim testified, the reasons for extending rental coverage beyond seven days generally had nothing to do with the time reasonably required for an insured to replace a vehicle."). However, the Court does not further address this dispute given that the record shows that extensions are not systematically made available to insureds.

possible. That is not enough to conclude that LMPIC satisfied its obligation to make an individualized determination of the time an insured reasonably required to replace their covered vehicle.[18]

Neither the seven-day guideline nor LMPIC's extension practices fulfill LMPIC's obligations under the OTEC Endorsement, as they have been interpreted by the Court. Therefore, the element of breach is satisfied.

### 3. <u>Damages and Standing</u>

Having established that the contract was breached, the Court next turns to whether Plaintiffs have established damages and standing for unnamed class members.[19] LMPIC makes a series of related arguments concerning some class members' alleged lack of standing and the flaws in Plaintiffs' damages model.[20] It claims that "[a]t a minimum, LMPIC is entitled to summary judgment against those class members who have no evidence of damages or were provided more than the minimum seven days of rental coverage." Dkt. 191 at 7. Specifically, LMPIC argues that "23,326 class members returned their rental vehicles within the time afforded by LMPIC, and thus, could not possibly have suffered a loss" sufficient to confer them with standing. *Id.* at 21. LMPIC

[18] The Court concludes that LMPIC does not systematically offer extensions that constitute individualized determinations, but also does not adopt Plaintiffs' interpretation that individualized determinations must take place "*before* limiting benefits." Dkt. 206 at 16 (emphasis in original). There is no basis in the OTEC Endorsement's language for that rigid temporal requirement. If LMPIC started with a default period of seven days of rental coverage, and then systematically gave each insured an individualized determination as to whether they reasonably required an extension, or even indicated the availability of a process through which an insured could request such a determination, that would not breach the contract. However, that is not LMPIC's policy.

[19] LMPIC acknowledges that "specific out-of-pocket losses" have been enumerated for named Plaintiffs, Dkt. 232 at 9 n.8, and that "the named Plaintiffs themselves may be able to raise a disputed issue of fact regarding whether LMPIC breached the OTEC provision," *id.* at 9 n.10.

[20] While standing is typically a threshold issue resolved before the merits, the Court considers this jurisdictional dispute over standing for unnamed class members "inextricably intertwined with the merits," *In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 97 (D.N.H. 2004), and "think[s] it prudent to dispose of both standing and merits issues together," *Griswold v. Driscoll*, 616 F.3d 53, 56 (1st Cir. 2010).

makes the same argument regarding the "2,915 class members [who] did not rent through Enterprise" and sought reimbursement for out-of-pocket expenses.[21] *Id.*

LMPIC further argues that Plaintiffs' damages models, which "assume that every single class member is entitled to the policy's stated rental limits," would "lead to absurd results" because "awarding the maximum amount of rental coverage to class members who did not suffer damages equal to that amount would create an unjust windfall for them." *Id.* at 16. LMPIC's expert explains that "'policyholders that returned their rental vehicles before their rental authority ended are unlikely to have suffered economic injury,' and likewise, 'an insured who rented for precisely the number of authorized days is uninjured because, in doing so, they incurred no covered expenses themselves.'" Dkt. 234 ¶ 71 (quoting Dkt. 194-21 ¶¶ 117, 120).

Plaintiffs argue that LMPIC breached the contract with respect to all class members by failing to make an individualized determination of the time reasonably required to replace their vehicle. In Plaintiffs' telling, that "breach of contract gives rise to an injury in fact, conferring Article III standing." Dkt. 206 at 21. Plaintiffs dispute both the accuracy and the legal relevance of LMPIC's expert's calculation of class members' incurred out-of-pocket expenses. *Id.* at 21–22.[22] They also argue that "Article III standing does not rise or fall on whether an insured ultimately incurred unreimbursed rental expenses," since some insureds may have returned their vehicle prior to the last day of stated coverage "because they did not wish to incur out-of-pocket expenses they had been told would not be covered, or otherwise." *Id.* at 22.

[21] The parties agree that "class members who exhausted the limits of their rental coverage in fewer than thirty days"—for example, class members that received at least the full extent of their $900 per accident limit on coverage in a less than thirty-day period—lack damages and should be excluded from the class for lack of standing. Dkt. 206 at 20; *see* Dkt. 191 at 22 & n.5.

[22] The Court does not address this accuracy dispute, and the associated arguments in Plaintiffs' motion to strike, Dkts. 203, 209, because the Court does not rule as a matter of law that class members who returned their vehicle within the coverage time allotted by LMPIC experienced no harm and had no standing.

Damages from LMPIC's breach must relate to the shortfall between the duration of rental coverage an insured received, and the duration of rental coverage that an insured reasonably required. *See Elec. M & R, Inc. v. Banco Popular de Puerto Rico*, 863 F.2d 1055, 1059 (1st Cir. 1988) ("It is a basic principle of contract law that damages cannot be recovered unless they were in fact caused by defendant's breach."). Under this understanding, neither party's arguments regarding which class members have damages yield summary judgment. Plaintiffs' damages calculations assume that thirty days of coverage is owed in every instance LMPIC fails to make an individualized determination. *See* Dkt. 206 at 13. That assumption is erroneous. *See supra* Section III.A.1.b. LMPIC assumes that class members who returned their vehicle within the time afforded by LMPIC were unharmed, *see* Dkt. 191 at 21–23, but an insured may have returned their car to comply with LMPIC's inaccurately stated coverage deadline, even if they reasonably required more time.

Therefore, there are genuine issues of material fact as to the amount of damages that class members are entitled to under the terms of OTEC Endorsement. By implication, Plaintiffs have sufficiently demonstrated "that there is a genuine question of material facts as to the standing elements," which is sufficient at summary judgment even if unnamed class members have not "establish[ed] that they in fact have standing." *Healy v. Millman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026) (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002)). While the Court does not grant summary judgment given the disputes as to damages, it notes that damages in a class action must be "capable of measurement on a classwide basis," *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

In light of the Court's partial adoption of Plaintiffs' interpretation of the OTEC Endorsement, and the dispute as to damages, the Court will grant Plaintiffs' motion for partial

summary judgment on the breach of contract claim only as to liability. The Court finds that the Optional Transportation Expenses Coverage ("OTEC") Endorsement requires LMPIC to determine the amount of time reasonably required for insureds to replace their totaled vehicle, and that LMPIC failed to fulfill that obligation. The Court, having expressly rejected Plaintiffs' classwide damages theory, notes that "a class certification order may be altered or amended before final judgment." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 26 (1st Cir. 2008).

**B. <u>Bad-Faith Claims</u>**

Only LMPIC moves for summary judgment on Plaintiffs' bad faith claims under Missouri Revised Statute § 375.420 ("section 375.420") and Section 155 of the Illinois Insurance Code ("section 155"). To prove a violation under section 375.420, a plaintiff must establish "(1) it had an insurance policy with the insurer; (2) the insurer refused to pay; and (3) the insurer's refusal was without reasonable cause or excuse." *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 498 (Mo. Ct. App. 2021). Section 155 prohibits insurance companies from causing "'vexatious and unreasonable'" delays in paying covered losses to their insureds." *Travelers Com. Ins. Co. v. Hansen*, 2026 WL 2150040, at *4 (N.D. Ill. July 27, 2026) (quoting 215 Ill. Comp. Stat. § 5/155(1)).

LMPIC first argues that the "bad faith claims are premised on the erroneous belief that the OTEC [Endorsement] requires LMPIC to make a determination as to what period of time is reasonably required to replace an insured's totaled vehicle." Dkt. 191 at 24. As set forth above, that belief is not erroneous. *See supra* Section III.A.1.a.

LMPIC next argues that even if the Court were to find that "instead of making such a determination, LMPIC employed an inflexible 'seven-day rule,'" it did so in good faith, based on a reasonable estimate of how long it takes to replace a totaled vehicle. Dkt. 191 at 24. Even if

LMPIC's interpretation of unsettled contract language itself is in good faith, it remains in dispute whether the seven-day guideline is a reasonable but erroneous interpretation of LMPIC's coverage obligations, as there is conflicting evidence on whether the seven-day guideline was developed to provide the time reasonably required to replace a covered vehicle, or based simply on matching competitors' offerings. Dkt. 234 ¶¶ 42–45, 166–69. Plaintiffs have also placed in dispute whether LMPIC's communications to set (and perhaps unduly lower) the coverage expectations of insureds are financially motivated. *See id.* ¶ 149. These fact disputes pertain to the insurer's attitude, which is key to determining liability under both section 375.420 and section 155. *See DeWitt v. Am. Fam. Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) ("The existence of a litigable issue, either factual or legal, does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant."); *McGee v. State Farm Fire & Cas. Co.*, 315 Ill. App. 3d 673, 681 (2000) ("A trial court must consider the totality of the circumstances including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of her or his property."). Therefore, the bad faith claims survive summary judgment.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment on the breach of contract claim is GRANTED in part only as to liability and DENIED in part. The Court finds that the OTEC Endorsement requires LMPIC to make an individualized determination of the amount of time insureds reasonably required to replace their totaled vehicle, and that LMPIC failed to fulfill that obligation. LMPIC's motion for summary judgment is DENIED. Plaintiffs' motions to strike are DENIED as moot.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: October 21, 2026